McCarty *v.* Rountree.

——♦——

McCarty & Wife, Plaintiffs in Error, *vs.* Rountree, Defendant in Error.

1. Under our statute, the parent, as natural guardian, has no power to dispose of the property of the minor child not derived from such parent, before giving bond with security.
2. No demand before suit is necessary where the defendant is wrongfully in possession.

*Error to Polk Circuit Court.*

This was a suit commenced by Benjamin F. McCarty and Mary Ann, his wife, for the possession of a slave named Mary and her increase. The petition stated that Robert Noll, in the state of Tennessee, in 1836, gave the slave Mary to the plaintiff, Mary Ann, his grand-daughter, who was then an infant, residing in the family of her father, Abner F. Noll; that shortly afterwards said Abner F. removed with his family to Polk

county, Missouri, bringing the said slave with him; that in 1838, said Abner F., without the consent of said Mary Ann, sold and delivered said slave to Campbell & Bunch, who sold and delivered her to the defendant. No demand before suit was alleged or proved. On the trial, there was evidence to sustain the allegations of the petition. The defendant offered some evidence, for the purpose of showing that Robert Noll really intended the gift for the benefit of his son, and made use of the name of the plaintiff, Mary Ann, to keep the slave beyond the reach of the creditors of Abner F. Noll.

The court directed the jury that the sale of the slave by the father, while in his custody as natural guardian, passed the title of the ward, if there was no fraud on the part of the purchaser; and refused to instruct that the father had no control over the slave as natural guardian, unless he had given bond with security, as required by statute.

*Leonard* and *Hayden*, for appellant. 1. A guardian by nature has no authority at common law over the estate of his ward, and even by our statute, he has no such authority, until he has given the security required by the statute, except perhaps over property that he himself may have given to his child. R. C. 1835, tit. "Guardian and Ward," secs. 1 and 7. R. C. 1845, same title, secs. 1 and 17. *Hyde* v. *Stone*, 7 Wend. 354. *May* v. *Calder*, 2 Mass. 55. *Mills* v. *Boyden*, 3 Pick. 216 and 217. *Genet* v. *Talmadge*, 1 Johns. Ch. Rep. 4. Children are the favorites of courts of justice, and being incapable of protecting themselves, are under the peculiar protection of the courts of the country. If it were required, the courts would be warranted by the necessity of the case, in straining the words of the statute, so as to deny to the father any power over his child's property not derived from him, until he had given the security required by law. Here, however, there is no such necessity. The statute requires all other guardians to give security *before* they enter upon their duties, and then expressly requires guardians by nature to give security *as other guardians;* that is, before they enter upon

the duties of their office ; and it has always been held, even when not so expressly provided, that the provision is not merely directory, but a condition that must be fulfilled, in order to clothe the guardian with the power to act. 2. A guardian's authority over his ward's personal property, is a mere authority, without an interest—the title remaining in the ward, and the guardian being merely entrusted with authority to manage it for the ward's benefit ; and so, a sale made by a father, in his own right, and not as guardian, transferring his *own* title, and not the title of his ward, cannot divest his ward's title. *Granby* v. *Amherst*, 7 Mass. 1. *Mason* v. *Fletcher*, 13 Pick. 206.

*Wright* and *Gardenhire*, for respondent. The father, as natural guardian, possesses as ample power to control the estate of his minor children as any other guardian. Whatever might have been his authority at common law, our statute places him on the same footing as other guardians. The title to the personal property of the ward is vested in the guardian, and he has full power to dispose of it. The question as to the due exercise of the power arises between him and his ward, to whom he is responsible for the faithful discharge of his duties, but a stranger who buys from him in good faith will be protected. *Field* v. *Schiffelin*, 7 J. C. R. 150. The giving of bond and security is not a condition precedent to the guardian's right to act. The clause requiring bond to be given is merely directory. If he fails to give bond, the court may, upon suggestion, appoint a curator, but until that is done, his right to act and control the property of the ward continues. There was no demand before the commencement of this suit, which was necessary. 13 Ill. Rep. 315. The evidence tends to show that the slave was really intended for Abner F. Noll, and not for his daughter, and that, if her name was used in the transaction, it was to protect the property from his creditors. The instructions took from the jury all consideration of the question of fraud.

RYLAND, Judge, delivered the opinion of the court.

McCarty and wife brought their civil action in the Circuit Court of Polk county, against Rountree, for the recovery of a negro woman and her two children, slaves. The plaintiffs suffered a nonsuit under the instructions of the Circuit Court— moved to set the same aside, but failing in their motion, they excepted to the opinions of the court, and bring the case here by appeal.

From an examination of facts set forth in the record, the main question in the case involves the power of the father, as *natural guardian*, to manage and control the personal property of his child, which has come to the child from any other person than the father, before he has given bond, as required by our statute.

It is well settled that the guardian by nature has, at common law, power over the person only, and not the personal estate of the ward. The question here depends on the construction of our statute.

The first section of the act concerning guardians, curators and minors, (R. C. 1835, p. 294,) the law in force when the plaintiff's wife was brought to this state by her father, is as follows: " In all cases not otherwise provided for by law, the father, while living, and after his death, and when there shall be no lawful father, then the mother, if living, shall be the natural guardian of their children, and have the custody and care of their persons, education and estates ; and when such estate is not derived from the parent, acting as guardian, such parent shall give security, and account as other guardians." Section 7 of the same act : " All guardians and curators appointed by the courts, or chosen by the minors, shall be twenty-one years of age, and shall, respectively, before entering upon the duties of their offices, give bond, with security, to be approved by the court before which they shall be appointed or chosen, to the state of Missouri, for the use of the minors respectively," &c., &c.

The first and seventeenth sections of the act of 1845, concerning guardians and minors, (R. C. 1845, p. 547–550,) are very similar to the first and seventh sections of the act of 1835.

The plaintiffs contend that, under the provisions of our statutes, though the father or mother is declared to be the natural guardian of his or her child, and as such has the custody and control of his person and his education, and is entitled to have the control and management of his estate ; yet, before such natural guardian can have any control or power over the estate of his ward, he must enter into bond and security to the state, as is required to be done by other guardians, unless the power and control be exercised only over such property as may be derived by the ward from such natural guardian ; that is, whenever the minor child becomes the owner of property through any other person than its natural guardian, such natural guardian must *first give bond and security*, as the law requires of other guardians, before he has any control or power over the estate of his child and ward.

The respondent, on the other hand, contends that the father, as natural guardian, under our statute law, has the control and power over the estate of his child, no matter from what source derived, and can manage and control such estate of the ward, without first entering into the bond with security, as is required by other guardians—consequently, that he can sell and make way with his child's property, being responsible to such child only.

The plaintiff's counsel very correctly remarks that children are the favorites of courts of justice, and being incapable of protecting themselves, are under the peculiar protection of the courts of the country. The courts, then, should construe the statutes designed to protect the rights and estates of minors, liberally, so as to promote the object of such statutes, as far as can be done consistently with their phraseology.

1. In the opinion of this court, the father, as natural guardian of his child, has no right to control or dispose of the property

23—VOL. XIX.

of the child, derived from any other person than the father, until he has given bond with security under the statute.

Look at the last clause of the first section of the act of 1835—guardians, &c., above quoted. The first part of the section gives "the custody and care of the persons, education and estate of the children" to the natural guardian, and the last clause qualifies this power, by declaring "that, when such estate is not derived from the parent acting as guardian, such parent shall give security, and account as other guardians." Now this very same statute, in section seven, expressly requires that "all guardians and curators appointed by the courts, or chosen by the minors, shall be twenty-one years of age, and shall, respectively, *before entering* upon the duties of their offices, *give bond, with security*, to be approved by the court," &c.—"shall give security, and account as other guardians." How and when do other guardians give security? By going before the court having probate jurisdiction, or the court appointing them, and giving their bonds in double the value of the ward's estate or interest committed to their care, with security to be approved by the court, payable to the state of Missouri, for the use of the minors, before they shall enter on the duties of their office. Then, under this first section, as the natural guardian, the father must give his bond with security, like any other guardian, before he can have any power or control over his child's estate, other than what he has himself given to his child. He, as the natural guardian, cannot dispose of his child's property—has no power over it—no authority to sell it, until he gives his bond, as required by the act of the legislature. This is the plain and obvious meaning of the statute. Any other and different construction would place the estates of minors, in the hands of their natural guardians, to be wasted or spent, as circumstances might urge, without any benefit to the minor, or any available responsibility of the natural guardian.

2. This view of the subject settles the point raised by respondent's counsel, about the making a demand before bringing

the suit. The natural guardian having no right, before giving bond, to dispose of his daughter's slave, could pass no title to the slave by his individual act of sale to Campbell & Bunch, nor did they pass any title by their sale of the slave to defendant. The plaintiffs might, therefore, well sue, without demand being first made.

The point raised by the respondent about fraud, as to the creditors of the father of plaintiff's wife, that is, the creditors of Abner F. Noll, has no force in it. The grand-father gives to his grand-daughter a negro girl : how can this affect the creditors of the father of the grand-daughter? Have they any cause of complaint that a child of their debtor should receive a donation from a person who owes them nothing?

Upon the whole case, this court is of opinion, that the court below erred in refusing to give proper instructions, and in giving illegal instructions. Its judgment is therefore reversed, and this cause is remanded, to be further proceeded in, after setting aside the nonsuit, in accordance with the views and principles contained in this opinion. The other judges concurring.