HATTY HIGGINS, INFANT, BY ELIZA HIGGINS, HER GUARDIAN, Respondent, *v.* HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Appellant.

1. *Practice—Infant.*—A petition by an infant must show that the plaintiff is an infant, and sues by a guardian, or next friend legally appointed, or it will be bad on demurrer.

2. *Damages—Carriers—Railroads.*—The provision of the act (R. C. 1855, p. 647, § 2) relating to passengers dying from injuries occasioned by defects in the railroad or means of transportation, applies only to those transported or carried as passengers. Where the relation is properly that of master and servant, this particular clause of the act has no application. (See *ante* Schultz v. Pacific R.R., 13.) When the passenger by his own misconduct or negligence contributes to the injury, as by riding in the baggage car, contrary to the rules of the railroad, he cannot recover in case of injury.— R. C. 1855, p. 438, § 54.

*Appeal from Hannibal Court of Common Pleas.*

On the trial the appellant proved by J. T. K. Hayward, the general superintendent for the company, and his son, who was his clerk, that there had been notices put up inside the passenger coaches and on the baggage car of said train in 1859, and that they were up at the time of the accident;

that said notices, through accidents, had been all destroyed or lost; that he and his clerk had made diligent search for copies of said notices in all places where they had been, or were likely to be found, but that they had not succeeded in finding any copy of said notices. The appellant then offered to prove by secondary evidence the contents of these notices. The plaintiff objected to the introduction of such evidence. The court sustained the objection, and rejected the evidence as inadmissible, on the ground that it was improper, irrelevant, and had no bearing on the issue in this case; to which the defendant at the time excepted.

Defendant then offered to prove by witnesses that, at the time of the accident, notices were posted up in the baggage car, and also in the passenger cars of the train, on which said Higgins was at the time of the accident, in words and figures following: "No passengers are allowed to stand or ride on the platform of the cars, or in any baggage, wood or freight car; and any one violating this rule will do so entirely at his own risk.—J. T. K. Hayward, Gen'l Sup't." And thereupon the court sustained an objection, and rejected the evidence as inadmissible.

At the request of the respondent the court gave the following instructions to the jury:

1. By the answer in this case, defendant admits it was on the 16th day of September, 1861, the owner of the railroad, cars, locomotive, &c., named in the plaintiff's petition; and admits that Thomas G. Higgins, on the 16th day of September, 1861, was travelling on said railroad, and while so travelling on said railroad the said Thomas G. Higgins was killed, and did die from an injury received on the said railroad, and that his said injury and death was occasioned by a defect and insufficiency in said railroad. If the jury find from the evidence that the said Thomas G. Higgins, at the time of receiving said injury and death, was a passenger on said railroad, and that the plaintiff was and is the minor child of the said Thomas G. Higgins (and his only minor child), the jury will find for the plaintiff on the first count of plain-

tiff's petition, and assess the damages at five thousand dollars, unless the defendant has shown to the satisfaction of the jury that the defect or insufficiency in said railroad was not a negligent defect or insufficiency.

2. In order to constitute the said Thomas G. Higgins a passenger on said railroad under the law, it is not necessary that he should actually have paid any passage money or fare: the defendant had the right to demand from him the fare or passage money paid by other travellers on said railroad, and if the defendant declined or neglected to collect said fare or passage money from said Higgins, the fact does not constitute the said Higgins less a passenger on said railroad.

3. If the jury find from the evidence that the said Thomas G. Higgins was lawfully upon the railroad of the defendant, and while on the said railroad his death was caused by the wrongful act, neglect, or default of the defendant, in the not keeping in safe and secure condition the said railroad or any part thereof; and if the jury further find from the evidence that the plaintiff herein was, at the said date of said Thomas G. Higgins' death, and is his only minor child, then the defendant is liable to plaintiff in damages, and the jury will find for the plaintiff, and assess her damages at such sum as the jury may think proper, from all the evidence, not exceeding five thousand dollars.

4. If the defendant by its servants undertook to carry Thomas G. Higgins along the Hannibal and St. Joseph railroad, and while so conveying him along said railroad the said Higgins was injured and killed by means of a defect or insufficiency in any part of said railroad, or of any culvert on said railroad; and if the jury believe from the evidence that the plaintiff is, and was, at the time of the said injury and death, the minor child of said Higgins, then the defendant is liable to the said plaintiff for the injury and death of said Higgins, caused or occasioned by said defect or insufficiency, although no compensation was to be paid to the company for conveying said Higgins.

5. Although the jury may find, from the evidence, that

the said Thomas G. Higgins was, at the time of the injury and death aforesaid, travelling in the baggage car on said railroad, this fact will not preclude a recovery in this case, if the jury shall find from the evidence that said Higgins was in said baggage car with the knowledge of the conductor, and without objection from him, even though the jury may find from the evidence that said Higgins might or would not have been injured if he had been in the passenger car when the accident that resulted in his death occurred.

6. If the jury find from the evidence that the said Thomas G. Higgins was received into the cars of the defendant by the conductor of the train, and the train was a passenger train running for the carrying of passengers for hire, the law presumes that the said Higgins was received as a passenger, and as such he was entitled to all the privileges and rights accruing to any other passenger, unless the evidence shows to the satisfaction of the jury that he was received on said train as a hand or employee on said train to assist in working and running the said train.

7. Unless the jury find, from the evidence, that the said Higgins was in the employment of the defendant, and by virtue of said employment was bound to perform service, and entitled to wages from the defendant on the day and at the time he was killed, then said Higgins did not on said day stand in the attitude of a servant to defendant, nor of a co-servant with the employees, or co-servant conducting or managing the train on which the accident occurred.

To the giving of which instructions the appellant at the time excepted.

The defendant asked the court to give the following instructions to the jury :

1. If the jury believe from the evidence that Thomas G. Higgins was employed by the defendant to act as brakeman on one of its trains on its road, and on the morning of the 16th of September, 1861, he got into the baggage car of the defendant's passenger train bound west, and paid no fare, but acted and was treated as an employee by the conductor

of said train; and when said train got out to the culvert at or near the seven-mile post on the defendant's road, the baggage car in which said Higgins was riding was precipitated from the track and down an enbankment, and the said Higgins was thrown out of the car and killed, they will find for the defendant, notwithstanding they may believe from the evidence that said Higgins was not acting as such brakeman at the time of such accident, and notwithstanding the plaintiff was an infant, and only child of said Higgins.

2. If the jury believe from the evidence that Thomas G. Higgins was employed by the defendant to act as brakeman on one of its trains on its road, and on the morning of the 16th of September, 1861, he got into the baggage car of the defendant's passenger train bound west and paid no fare, and acted and was treated as an employee by the conductor of said train; and when the said train got out to the culvert at the seven-mile post on defendant's road, the baggage car was precipitated from the track and down an embankment, and said Higgins was thrown out of said car and killed, they will find for the defendant, notwithstanding they may believe from the evidence that said Higgins was not acting as such brakeman at the time of the accident.

3. If the jury believe from the evidence that Thomas G. Higgins was killed on the 16th of September, 1861, in consequence of a part of the culvert at the seven-mile post on defendant's road being defective by reason of an unusually heavy rain the night before having washed out the lower part of said culvert, and said defect could not be seen by the engineer in charge of the locomotive attached to the train while in the discharge of his duty; and they further believe from the evidence that said engineer was a safe, skillful and prudent engineer, and that he exercised reasonable care and skill in running his locomotive that morning, and in watching for defects and obstructions upon the track, they will find for the defendant.

4. If the jury believe from the evidence that Thomas G. Higgins was a passenger on defendant's train in the baggage

car, and shall further believe that the passengers were by the rules and regulations of the company prohibited from riding in the baggage car, and that said Higgins had notice of said prohibition at and before the time of the accident, and they further believe from the evidence that the defendant furnished sufficient room inside its passenger cars for the proper accommodation of the passengers, they will find for the defendant.

5. If the jury shall believe from the evidence that Thomas G. Higgins was not, at the time of the accident which resulted in his death, in the employ of the defendant; and shall further believe that, by the general rules and regulations of the defendant, its engineers and conductors were prohibited from admitting persons not in its employ to ride in the baggage car, and that said Higgins was aware of said rules and regulations, and was permitted to ride in the baggage car by the conductor without paying fare, and was killed while so riding, he was a wrong-doer. The permission of the conductor conferred no legal right, and the plaintiff cannot recover.

6. That if they shall find from the evidence that competent engineers were by the defendant employed to superintend and build that portion of the railroad at which the accident occurred, and they did superintend and direct the building of same, then the defendant was guilty of no neglect in the construction or building of the culvert in question.

7. If the jury believe from the evidence that there was neglect or want of care on the part of Thomas G. Higgins, which contributed to his death, the plaintiff cannot recover, and the verdict should be for the defendant.

8. If the jury believe from the evidence in the cause that Thomas G. Higgins, at the time of the accident, was in the baggage car, sitting in the front of, or standing near the south door thereof, and that the position occupied by Higgins was more dangerous than a position in the passenger coaches, and that said Higgins had been previously employed on defendant's road as an engineer and brakeman, and knew these facts, then there was negligence on his part which conduced

to the injury resulting in his death, and the verdict should be for the defendant.

9. If the jury believe from the evidence that the proximate cause of the accident described in plaintiff's petition, which resulted in said Higgins' death, was occasioned by the act of God, in sending down an unusual rain in the immediate vicinity of the culvert where said accident occurred, they will find for the defendant.

10. If the jury believe from the evidence that said Higgins paid no fare, and was passing on the railroad free of charge, in order to entitle the plaintiff, as his minor child, to recover damages, *she must prove gross negligence*, which is the omission of that care which even the most thoughtless take of their own conduct.

11. That if the negligence of the deceased in any manner contributed to cause the injury which resulted in his death, the plaintiff cannot recover.

12. If Thomas G. Higgins was an employee of defendant at the time of the injury which resulted in his death, the plaintiff must show by evidence that, prior to the accident, defendant had notice of the defect or insufficiency in the culvert.

13. Notice to an employee or agent of the defendant is not notice to the defendant, but plaintiff must show by proof that the president or directors, or some one of them, were, prior to the accident, notified of the defect or insufficiency.

14. If the jury believe from the evidence that the foreman of the section, on which was the culvert at which the defect or insufficiency complained of, was competent, careful and skillful, and that he went or sent some of his men over his section every day, and examined the track and road carefully on the Saturday before the accident, and discovered no defect or insufficiency in said culvert; and they further believe from the evidence that trains ran safely over said culvert the evening preceding said accident, and that an unusually heavy rain fell in the immediate vicinity of said culvert the night before said accident, and that the rain was not heavy

in the city of Hannibal and its vicinity, and that said section foreman resided in said city of Hannibal, and that the lower part of said culvert washed out by said rain, leaving the top of the same and the superstructure standing apparently all right, and that the said Thomas G. Higgins was in the baggage car of the train, and said baggage car was precipitated from the track in consequence of the washing out of said culvert, and said Higgins was killed thereby, that the defendant exercised reasonable care and diligence in keeping its road and track in good order, and they will find for the defendant.

15. If the jury believe from the evidence that the culvert at which the accident in question took place was properly constructed for the purpose for which it was designed, and that it was in a safe and proper condition up to the evening preceding said accident; that the accident resulting in said Higgins' death was caused by the washing out of the lower part of said culvert by an unusually heavy rain the night before, and that the defect occasioned thereby was not visible to the engineer on the locomotive of the train that met with the accident, by the exercise of care and skill while in the discharge of his duty, such defect was not a negligent defect for which the defendant is liable, and they will find for the defendant.

16. If the jury believe from the evidence that the culvert described in the plaintiff's petition was in a safe and secure condition up to the night preceding the accident which resulted in said Higgins' death, and that the lower part of said culvert was washed out the during said night by an unusually heavy rain which fell in the immediate vicinity of said culvert, then said washing out of said culvert was not a negligent defect or insufficiency so as to render the defendant liable therefor, and they will find for the defendant.

17. If the jury believe from the evidence that the defect in defendant's road, which occasioned said Higgins' death, was not the result of negligence on the part of the defendant,

and such defect was not a negligent defect or insufficiency, they will find for the defendant.

The court gave the 17th, and refused the other instructions.

The court, of its own motion, gave the following instruction in lieu of No. 16:

"If the jury believe from the evidence in the cause that the culvert described in plaintiff's petition was in a *safe* and *secure* condition, and *free from any defect or insufficiency* as a culvert *up to the night preceding the accident* in question which resulted in the death of Thomas G. Higgins, and that the lower part of said culvert was washed out during said night by an unusually heavy rain which fell in the vicinity of said culvert, and which washing out did not result from any pre-existing defect or insufficiency of said culvert which reasonable skill and care on the part of defendant could have prevented or remedied, then they will find for the defendant."

To the giving of said instruction the defendant at the time excepted.

*Carr*, for appellant.

I. The respondent being an *infant, has no capacity to sue*, only in the mode prescribed in the Practice Act. (R. C. 1218–19.)

The point has been before the Supreme Court, and other courts of New York, frequently. They have held that an infant can only institute and prosecute a suit by a guardian appointed in conformity with their code; and a suit instituted in any other way, even by a *next friend*, is irregular, and the defendant may make his objection at any stage of the proceedings, and when made it is the duty of the court to set aside the proceedings already had in the case. (Hurlburt, &c., v. Young, 13 How. Pr. R. 413; Tyler v. Smith, *id.* 104; Hoftailing v. Teal, 11 *id.* 188; Burnham v. De Bevoroe, 8 *id.* 159; Hulburt, &c., v. Young, 13 How. Pr. R. 413.)

The case of Stanley v. Chappell (8 Cow. 236) is precisely

in point. The plaintiff described himself as guardian in the declaration, but a demurrer was sustained because he did not show "*how he was guardian, or that he was specially appointed by the court.*"

III. The respondent's father, Thomas G. Higgins, was an employee at the time of the accident which resulted in his death, and hence the appellant is not liable in damages for his death.

The principle of the common law is old and well established, that an employee cannot recover damages off the employer for injuries sustained by the negligence of a co-empolyee. (Farwell v. Boston & Worcester R. Corp. Amer. Railw. Cases; Murray v. South Car. R.R. Co., 1 McMullan, 385; Russell v. Hudson River R.R. Co., 17 N. Y. 134; Coon v. Syracuse R.R. Co., 1 Selden, 492; Boldt v. N. Y. C. R.R. Co., 18 N. Y. 432; Sherman v. Rochester & Syracuse R.R. Co., 17 N. Y. 153; McDermott v. Pacific R.R. Co., 30 Mo. 115; Gilshannon v. Stony Brook R.R. Co., 10 Cush. 228; Degg v. Midway Railw. Co., Hurl. & Norm. Excheq. R. 773.)

IV. But, if it shall be held that said Higgins was a passenger at the time of the accident which resulted in his death, then the appellant is not liable in damages therefor, for the reason that as a passenger he had no right to ride in the *baggage car.* (R. C. 1855, p. 438, § 54.)

The evidence shows that there were two passenger coaches in the train the morning of the accident, and but a few passengers; that there was not only room sufficient inside of said coaches for the respondent's father to ride, but there was ample room. The evidence offered by the appellant to prove that printed notices were posted up at the time in a conspicuous place inside of its passenger cars then in the train, and likewise in the baggage car, was relevant to the issue, and ought to have been received. These notices prohibited passengers from riding in the baggage car.

The 5th instruction given for the plaintiff entirely ignores that old and well established principle of common law, that when a party's own conduct contributes to the injury sus-

tained, he cannot recover, although the other party may have been guilty of negligence. (Ernst v. Hudson River R.R. Co. 24 How. Pr. R. 97; Gahagan, Adm'x, v. Boston & Lowell R. R. Co., 1 Allen, 187; Wilds v. Hudson River R.R. Co., 24 N. Y. R. 430; Stevens v. Oswego & Syracuse R.R. Co., 18 N. Y. R. 422; Brooks v. Buffalo & Niagara Falls R.R. Co., 25 Barb. 600; Harding v. N. Y. & E. R.R. Co., 13 Barb. 9.)

Again: "It is incumbent upon the plaintiff to show, by *affirmative evidence, that he was in the use of due care;* and upon this point he has the burden of proof. (Adams v. Carlisle, 21 Pick. 146.) When, therefore, a plaintiff offers no evidence that he was in the exercise of care, but, on the contrary, the whole evidence upon which his case rests shows that he *was careless*, we have held that the court may rightfully instruct the jury as a matter of law that the action cannot be maintained. (Lucas v. Taunton & New Bedford R.R. Co., 6 Gray, 64; Gilmore v. Deerfield, 16 Gray,—; Gavett v. Manchester & Lawrenceburg R.R. 16 Gray.") Cited from 1 Allen, 187.

The 12th instruction is based upon the principle that an employee cannot recover, unless the company, prior to the accident, had *notice* of the defect or insufficiency in the culvert. This instruction enunciated a correct principle, and ought to have been given. (McMillan v. Saratoga & Washington R.R. Co., 20 Barb. 449; Keegan v. Western R.R. Co., 4 Seld. 180.

*Ewing & Harrison*, for respondent.

If the deceased was lawfully upon the car at the time of the disaster, and the disaster and consequent injury and death were caused by a negligent defect or insufficiency in the road, then plaintiff is entitled to recover notwithstanding the circumstances relied upon by defendant as forming a defence to the action, namely, that deceased was in the baggage car at the time, and paid no fare.

I. The death having been the direct consequence of the defect in the road (as admitted by the answer), the law pre-

sumes negligence on the part of the defendant. The degree of negligence is immaterial. (Coggs v. Bernard, 2 Ld. Raymond, 909; 1 Smith's Lea. Cas. 82, and cases there cited; Philad. & Reading R.R. Co. v. Derby, 14 How. S. C., U. S. 485–86; Thorne v. Deas. 4 Johns. 84.)

Any negligent conduct which causes injury or loss is actionable. (Amer. L. C. 242; McElroy v. Nashua L. R., 4 Cush. 400.)

· Passenger carriers are bound to exercise the utmost care and diligence of very cautious persons, and of course they are responsible for any, even the slightest, neglect. (Sto. Bail. § 601.)

The distinction between *negligence* and *gross* negligence has been discountenanced in modern authorities as unintelligible. (Wylde v. Pickford, 8 Mees. & W. 460–61.)

The question as to whether the defect or insufficiency in the road was negligent or not, was fairly presented to the jury in the instructions given by the court at the instance of plaintiff, and in that given in behalf of defendant, and by the court on its own motion.

This is not a case to which the doctrine of contributory negligence applies; and if it was, the instructions asked by defendant on that point state the rule incorrectly. Several of them declare as a *conclusion of law*, that the fact of deceased being in the car in a certain position, &c., was negligence, and plaintiff could not recover. (Lawrenceb. & Upp. Miss. R.R. Co. v. Montgomery, 7 Port., Ind. 479.)

II. The sole issue made by the pleadings is, was the defect or insufficiency in the road a negligent defect? There is no *averment* in the *answer* of negligence on the part of the deceased which contributed to the accident.

III. But even if the issues were such as to raise the question of negligence as respects the deceased, and if it was in the power of defendant to limit or qualify its liability or responsibility as a carrier of passengers by any rules or regulations such as are referred to in the bill of exceptions,—still the deceased was in the *baggage* car by the permission of the

conductor, and therefore lawfully there, and none of the accidents of his situation can affect the right of plaintiff to recover. (Smith, Mast. & Serv. p. 157; Sleath v. Wilson, 9 Carr. & Pay. 607; 38 E. C. L. 249; Joel v. Morrison, 6 Carr. & Pay. 501; Croft v. Alison, 4 Barn & Ald. 590.)

A master is liable for the tortious acts of his servant when done in the course of his employment, although they may be done in disobedience of orders. (Phila. & Read. R.R. Co. v. Derby, *supra;* Penn. R.R. Co. v. McCloskey, 23 Penn. S. R. 526; Ohio & Miss. R.R. Co. v. Muhling, 30 Ill. 9; Gr. North. Railw. Co. v. Harrison, 26 Eng. L. & E. 446-7; 23 Penn. 526, & 14 How. 485-6, *supra;* Carroll v. N. Y., &c., R.R., 1 Duer, 571; 30 Ill. 9.)

If, in any view of the case, the rules spoken of in the bill of exceptions could have been read in evidence, the railroad company could not by any such rules excuse its own negligence.

The notices or rules contemplated by the statute are required to be posted up in the *passenger* cars. (R. C. p. 438.) Deceased was not in a passenger car, and there was no evidence that he saw them or had any knowledge of them. Besides, even if it can be supposed that he had any such notice, still he was not in the baggage car in *violation* of such rules.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff, an infant and only child of Thomas G. Higgins, who was killed while riding in a baggage car on the Hannibal and St. Joseph railroad, on the 16th day of September, 1861, brings this suit—the widow having failed to sue within six months—to recover the five thousand dollars damages which are given by the second section of the "Act concerning damages" (R. C. 1855, p. 647), where any passenger shall die from an injury resulting from or occasioned by any defect or insufficiency in any railroad. The petition is evidently framed upon that act, though the statute is not named or referred to by any express words. It contained two counts, one framed upon the second section and the other upon the

third section of the act. The verdict was for the plaintiff upon the first count, and for the defendant upon the second count; and the damages were assessed at five thousand dollars. The defendant's motion for a new trial was overruled. The case comes up by appeal, and stands here upon the first count only.

There was no averment in the body of the petition that the plaintiff was an infant suing by guardian, nor that any guardian had been duly appointed, nor that Eliza Higgins was the mother and the natural guardian of the child, nor that she had given bond and security according to law as such natural guardian having charge of the estate of the minor. Averments of this nature are material, and should be made in the body of the petition. The title or caption of the cause should give the names of the parties to the action, and then they may be referred to in the body of the petition as the plaintiffs or defendants; but all necessary descriptions of the character of the parties, and all material allegations or statements of facts, must be contained in the petition itself, otherwise it will be demurrable. (Pr. Act, Art VI., § 3.) The incapacity of the plaintiff to sue here appeared on the face of the petition, and it was for that reason demurrable; where the defect does not appear on the face of the petition, the objection may be taken by answer; but if it be not taken either by demurrer or answer, it is waived, and will not be noticed on motion for a new trial or in arrest of judgment. (*Ibid.* 10.) This defect may be considered as having been cured also by the operation of the statute of jeofails. (§ 19 of Art. IX.) The result is, in such case, that the infant plaintiff will be allowed to recover judgment; but before the natural guardian would have any power or control over the money recovered, she should be required to give bond and security in the manner required by law in such cases. (McCarty v. Rountree, 19 Mo. 345.) A judgment will not be reversed on this ground alone.

The clause of the act on which this first count is framed relates exclusively to passengers and to cases of injury and

death occasioned by some defect or insufficiency in the railroad. The statute makes the mere fact of an injury and death, resulting from a cause of this nature, a *prima facie* case of negligence and of liability on the part of the defendant as a presumption of law. It is not a conclusive presumption, but disputable by proof, that such defect or insufficiency was not the result of negligence; nor does it preclude any other defence of a different nature. The act is to be interpreted and construed with reference to the state of the law as it stood before its passage. By the general principles of law which were applicable to common carriers of passengers, and to persons standing in that relation, the fact of an injury to a passenger occasioned by a defective railroad, car or coach, or by defect in any part of the machinery, made a *prima facie* case of negligence against the defendant sufficient to shift the burden of proof; and, by that law, carriers of passengers were held responsible for the utmost degree of care and diligence, and were liable for the slightest neglect. This act is evidently based upon the same principles; it is confined by its terms strictly to passengers, and to injuries arising from causes of that peculiar nature only; and it must receive a construction in accordance with these principles. Viewed in this light, it is clear that the intent of this clause of the act was to provide greater security for the lives and safety of passengers as such, and to enable the representatives of a deceased passenger to pursue the remedy given by the act; and no other class of persons is included within its purview.

The first question presented here is, whether the deceased person was a passenger within the meaning of the act. The evidence shows that he had been in the employ of the company as an engineer and brakeman for several years, with some intermissions; that for several months previous to the accident, and down to the 4th day of September, 1861, when his train was stopped by *guerrillas*, he had been continuously on duty as a brakeman, and that, about that time, the interruptions occasioned by actual hostilities in that neighborhood had

caused the train on which he was employed to cease running for a time, and that for several days before the day of his death he had not been in actual service on any train; but his name still remained on the roll of the company's employees as before. He had never been paid off and discharged; his account was unsettled, and there were arrears still due him at the time of his decease. It appears that the brakemen were paid monthly, but at the rate of so much a day for as many days as they actually worked during the month. These facts would all go to show that his employment still continued, and that his relation to the company was still that of an employee. On the morning of the accident, he signalled the train to stop and take him up, as it passed where he was; he took his place in the baggage car among other employees; he appears to have treated himself as an employee, and he was received by the conductor as an employee who was passing from one point to another on the road, in the usual manner. He engaged no passage, took no seat in any passenger car, paid no fare, and evidently did not expect to pay any, and none was exacted from him. He did not claim to be a passenger, nor was he considered otherwise than as an employee by the conductor. Upon a careful examination of the evidence on this point, we think it tended to prove that he was an employee, and not a passenger, within the purview of the act, and that, under all the circumstances, the conductor had a right to presume that he was travelling as an employee of the company merely.

Such being the relation of the parties, the mere circumstance that he had been off duty as a brakeman for some days, or that he was then passing on his own private errand, and not immediately engaged on the business of the company, or in running that very train, cannot be allowed to make any difference. (Gilshannon v. Stony Brook R. Co. 10 Cush. 228.) The conductor, knowing him only as·an employee, was not bound to inquire into his particular errand; and though informed by a casual conversation with him, in the baggage car, that he was looking for some temporary em-

ployment, so as not to lose time, he might still be justified in treating him as an employee, who had the privilege of free passage on the trains as such. Under such circumstances, it was his business, if he claimed to be a passenger, to engage or take a seat in a passenger coach as such, or, at least, in some way, to make it known to the conductor that he claimed to be travelling in the character of a passenger. Where a director was invited by the president to pass over the road as a passenger, without paying fare (Philad. & Read. R. Co. v. Dertry, 14 How., U. S. 468); where a man was taken up by the engineer of a gravel train, to be carried as a passenger, paying fare, as the practice had been, and was allowed to go from the tender to a gravel car (Lawrenceb. & Upper Miss. R. Co. v. Montgomery, 7 Ind. 474); and where a man who had been a workhand on the road, but had left the service of the company, two weeks before the accident, because they did not pay him, got upon the train to be carried as a passenger (Ohio & Miss. R.R. Co. v. Muhling, 30 Ills. 9); and where a house carpenter was employed to build a bridge, and was sent by the company on their cars to another place, to assist in loading timbers for the bridge (Gillenwaler v. Madison & Ind. R.R. Co., 5 Ind. 340), the injured person was held to be clothed with all the rights and character of a passenger and a stranger, and that he was not to be considered as standing on the same footing as ordinary employees and fellow-servants of the company. If this party had been invited to go on the train as a passenger, or had taken a seat in a passenger car, or had been taken on board the train in the character of a passenger, and the conductor had merely waived his right to demand fare, as an act of liberality or courtesy, and had then allowed him to pass into the baggage car to ride there, the case would have been quite different, and might have fallen within the reasoning and the principle of these adjudged cases. The benefit of this act was plainly intended for those only who stand strictly in the relation of passengers, and between whom and the carrier there exists the privity of contract, with or without a fare actually paid,

and the peculiar responsibilities which are implied in that relation and depend wholly upon it.    Where the relation is properly that of master and servant only, this particlar clause of the act has no application.    We think this matter was not fairly nor correctly laid before the jury by the instructions of the court below.

Again, even if the deceased party could be considered as having been in any proper sense a passenger, there could not be the least doubt that he had himself neglected all precautions, and voluntarily placed himself in a position which he knew to be the most dangerous on the train for a passenger. A baggage car is certainly no place for a passenger, and, as such, the proof shows he had no business to be there at all. We are aware that it has been held, in some cases, that if a passenger, who is travelling as such, is allowed to go into a baggage car, or into a part of the baggage car which is used for a post-office, where passengers are sometimes permitted to be, as in Carroll v. N. Y. & N. Haven R.R. Co. (1 Duer, 571), and while there an accident and injury occur by reason of negligence on the part of the company, and under such circumstances that his being in that place cannot be said to have materially contributed to produce the accident or injury, the defendant would still be held liable.    In many cases of this kind, it might be difficult to determine whose negligence had been the real cause of the injury ; but any question of this nature is removed from our consideration in this case by force of another statute, which finds an apt and just application here.    By the fifty-fourth section of the "Act concerning railroad associations" (R. C. 1855, p. 438), approved one day only after the act in question, it is expressly provided as follows :

" In case any passenger on any railroad shall be injured while on the platform of a car, or in any baggage, wood or freight car, in violation of the printed regulations of the company, posted up at the time in a conspicuous place inside of its passenger cars then in the train, such company shall not

be liable for the injury: *Provided*, said company, at the time, furnished room inside its passenger cars sufficient for the proper accommodation of the passengers."

This provision is, by the fifty-seventh section of the same act, made applicable to all existing railroads in this State— (*ibid.* p. 438). Under this section, the exemption of the company is made to depend upon a violation by the passenger of the printed regulations posted up in the passenger cars only. They are not required to be posted up in a baggage car; it is presumed that no passenger will ever be found there. There was evidence in the case tending to prove that this provision of the statute had been complied with on the part of the defendant; but the printed forms used had been changed since that time, and no copy of the former cards had been found, and, on proof made of the loss of them, secondary evidence was offered to prove their contents. This evidence was excluded as irrelevant and as having no bearing upon the case. In the view we have taken of this statute, the evidence was certainly very material, and should have been admitted. It is true, such notices could have given this party no information, for the reason that he did not go into the passenger cars; the evidence tended to show that he was, in fact, well acquainted with these regulations; and this consideration, so far from weighing anything in his favor, would rather tend to strengthen the inference that he was not a passenger at all. This statute proceeds again upon the general principles of law in relation to contributory negligence; and it supposes that a passenger who has had the warning of this notice, and who still ventures to place himself in a situation so dangerous as a baggage car, is to be considered as contributing by his own negligence to produce the injury, and therefore that the company is not to be held liable in such case.

We think the first and second instructions asked for by defendant should have been given, and that the fifth, sixth and seventh instructions given for the plaintiff should have

been refused.   It is not deemed necessary more particularly to notice the other instructions.

The judgment is reversed and the cause remanded.   The other judges concur.