Ewald vs. Chicago & Northwestern R. Co.

EWALD, Appellant, vs. THE CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Respondent.

*December 15, 1887 — January 10, 1888.*

*Railroads: Master and servant: Employee injured while going to his
work: Who are fellow-servants: Trainmen and engine-wiper.*

The plaintiff, a wiper of engines in the defendant's roundhouse, in
going to and from his work was, with other employees, in the
habit of using a beaten pathway across the defendant's yard. While
going to his work along this pathway, and just as he was crossing
the track, he was injured by the jamming together of freight cars
which had been left apart in order to allow the employees to pass.
*Held:*

(1) The plaintiff was, at the time of the injury, in the employ of
the defendant.

(2) He was a fellow-servant of the trainmen in charge of the
freight train, and could not recover for an injury caused by their
negligence.

TAYLOR, J., dissents, on the ground that at the time of the ac-
cident the plaintiff was not in the employ of the defendant.

APPEAL from the County Court of *Milwaukee* County.

Action to recover damages for personal injuries. The
substance of the complaint is stated in the opinion. The
plaintiff appealed from an order sustaining a general de-
murrer to the complaint.

For the appellant there was a brief by *Austin, Runkel &
Austin,* and oral argument by *Mr. W. H. Austin.* They
contended, *inter alia,* that the relation of fellow-servants
did not exist between the plaintiff and those operating the
train by which he was injured. In all cases where it is held
that persons in different departments of work are fellow-
servants, they were at the particular time of the accident
*engaged together upon the same job or to attain the same end.
Howland v. M., L. S. & W. R. Co.* 54 Wis. 226; *Naylor v. C.
& N. W. R. Co.* 53 id. 661; *Pool v. C., M. & St. P. R. Co.*

53 id. 657; *Heine v. C. & N. W. R. Co.* 58 id. 525; *Fowler v. C. & N. W. R. Co.* 61 id. 159; *Pease v. C. & N. W. R. Co.* id. 163; *Kelley v. C., M. & St. P. R. Co.* 53 id. 74; *Peschel v. C., M. & St. P. R. Co.* 62 id. 339; *Chicago & N. W. R. Co. v. Moranda,* 93 Ill. 303; *Valtez v. O. & M. R. Co.* 85 Ill. 500; *Toner v. C., M. & St. P. R. Co.* 69 Wis. 188. See, also, *Ryan v. C. & N. W. R. Co.* 60 Ill. 170; *East Tennessee, V. & G. R. Co. v. De Armond,* 5 S. W. Rep. (Tenn.), 600; *Gillenwater v. M. & I. R. Co.* 5 Ind. 339; *Louisville & N. R. Co. v. Collins,* 2 Duv. (Ky.), 114; *O'Donnell v. A. V. R. Co.* 59 Pa. St. 239; *Davis v. C. V. R. Co.* 55 Vt. 84; *Ford v. F. R. Co.* 110 Mass. 240; *Shanny v. Androscoggin Mills,* 66 Me. 420; *Brown v. C. P. R. Co.* 68 Cal. 171. The plaintiff at the time of the injury was not in the actual employment of the defendant or subject to its control, and therefore was not a fellow-servant with other of defendant's employees. Not having entered upon his work, as to the company he had the same rights as a stranger. *Baird v. Pettit,* 70 Pa. St. 477; *Vick v. N. Y. C. & H. R. R. Co.* 95 N. Y. 267; Wood on M. & S. sec. 404; *Packet Co. v. McCue,* 17 Wall. 508. The pathway was kept open and maintained by the company as a mode of ingress and egress to and from its roundhouse, and the defendant was bound to exercise ordinary care in passing over the pathway with its trains. *Barry v. N. Y. C. & H. R. R. Co.* 92 N. Y. 289; *Taylor v. D. & H. Canal Co.* 113 Pa. St. 162; *Kay v. P. R. Co.* 65 Pa. St. 274; *Bussian v. M., L. S. & W. R. Co.* 56 Wis. 332; *Peschel v. C., M. & St. P. R. Co.* 62 id. 346. It was a question for the jury whose negligence occasioned the injury. *Stetler v. C. & N. W. R. Co.* 46 Wis. 497; *Paulmier v. Erie R. Co.* 34 N. J. Law, 151.

For the respondent there was a brief by *Jenkins, Winkler & Smith,* and oral argument by *Mr. Jenkins.* Besides cases cited in the opinion, they cited the following as illustrating the principle and determining the character of co-employ-

ment: A conductor and a surveyor,— *Ross v. N. Y. C. &
H. R. R. Co.* 74 N. Y. 617; a laborer setting up a derrick
and a brakeman,— *Holden v. F. R. Co.* 129 Mass. 268; an
engineer and a station agent,— *Evans v. A. & P. R. Co.* 62
Mo. 49; *Dealey v. P. & R. R. Co.* 4 Atl. Rep. 170; *Brown v.
M. & St. L. R. Co.* 31 Minn. 553; a master mechanic and a
locomotive fireman,— *Columbus & I. C. R. Co. v. Arnold,*
31 Ind. 174; *Hard v. V. & C. R. Co.* 32 Vt. 473; an engi-
neer and a conductor riding as a passenger,— *Manville v.
C. & T. R. Co.* 11 Ohio St. 417; train-men and train de-
spatcher,— *Hodgkins v. F. R. Co.* 119 Mass. 419; train-men
and carpenters,— *Morgan v. Vale of N. R. Co.* L. R.*1 Q. B.
149; *Seaver v. B. & M. R. Co.* 14 Gray, 466; Beach on
Cont. Neg. 342, note 10; *Gillshannon v. S. B. R. Corp.* 10
Cush. 228; a conductor and the station baggage-master,—
*Colorado Cent. R. Co. v. Martin,* 7 Col. 592; Beach on Cont.
Neg. 341, note 11; an engineer and a telegraph operator,—
*Slater v. Jewett,* 85 N. Y. 61; an engineer and train de-
spatcher,— *Chicago, St. L. & N. O. R. Co. v. Doyle,* 8 Am.
& Eng. R. Cas. 171; *Blessing v. St. L., K. C. & N. R. Co.*
15 Am. & Eng. R. Cas. 298; laborers and engineer,— *Ryan
v. C. V. R. Co.* 23 Pa. St. 384; Patterson's R'y Accident
Law, 367, note 15; a section hand and engineer,— *Gormley
v. O. & M. R. Co.* 72 Ind. 31; a laborer of a construction
train and an engineer of a passenger train,— *Wabash, St. L.
& P. R. Co. v. Gordon,* 17 Bradw. 63; *Wabash, St. L. &
P. R. Co. v. Conklin,* 15 id. 157; switchmen and train-
men,— *Harvey v. N. Y. C. & H. R. R. Co.* 88 N. Y. 484;
*Walker v. B. & M. R. Co.* 128 Mass. 8; *Randall v. B.
& O. R. Co.* 109 U. S. 478; 15 Am. & Eng. R. Cas. 243, and
note; *Roberts v. C., St. P., M. & O. R. Co.* 33 Minn. 218;
laborer and yard foreman,— *Hoth. v. Peters,* 55 Wis. 405;
*Schadewald v. M., L. S. & W. R. Co.* id. 569; driver and
express agent,— *Dwyer v. Am. Ex. Co.* id. 453; switchman
and engineer,— *Fowler v. C. & N. W. R. Co.* 61 id. 159;

brakeman and conductor,— *Pease v. C. & N. W. R. Co.* id. 163; mâte and master,— *Mathews v. Case,* id. 491; mason and foreman,— *Peschel v. C., M. & St. P. R. Co.* 62 id. 338; car repairer and train-men,— *Kelly v. Abbot,* 63 id. 307; station agent and brakeman,— *Toner v. C., M. & St. P. R. Co.* 69 id. 188.

ORTON, J. The following portions of the complaint sufficiently raise the questions involved:· " That this plaintiff was, at the time hereinafter mentioned, employed by said defendant as a laborer, and his duty was to attend to the wiping and cleaning of locomotives belonging to said defendant, in the night-time and after they were removed from the tracks and into the roundhouse;" ·"that he had nothing whatever to do with the operation of said railroad or any of its rolling stock, and was not employed in any capacity upon any of the trains of said company, but his employment was confined exclusively to cleaning engines after they were run into said roundhouse;" " that on the 5th day of February, 1886, at about 6 o'clock in the evening of that day, this plaintiff was proceeding with due care and caution through the yard of the defendant to commence his night's work and labor in the roundhouse of said company; that he was walking in the usual and beaten path that had been worn and used by himself and others employed in said roundhouse for a long time prior to said last-mentioned date in going to and from his and their work; that in order to reach said roundhouse it was necessary for him to go upon said pathway and to cross the track of said defendant company in its said yards; that as he approached said track he noticed that it was occupied by a number of freight cars, and that said cars were uncoupled and separated and a space left between said cars where the aforesaid beaten path crossed said railway track." The complaint then substantially charges that the defendant well knew that such open-

Ewald vs. Chicago & Northwestern R. Co.

ing between the cars at said path was accustomed to be kept open for the use of its employees going from and coming to said roundhouse, and that the plaintiff had long known of such custom; that as he approached said track he looked up and down, and listened, and saw no engine, and no person at the crossing having charge of said train, and heard no noise or signal or anything to indicate that the cars were to be moved, and that he thereupon stepped in between said cars on said pathway, and, before he could get across, the defendant negligently and carelessly caused said cars to be jammed together by one of its locomotives, without warning by bell or whistle, and the plaintiff's arm was caught between the bumpers to said cars, and he was dragged by the movement of the train about sixty feet and greatly injured.

To this complaint the defendant interposed a general demurrer that it stated no cause of action; and the demurrer was sustained, presumably upon the ground that the plaintiff's injury was caused by the negligence of his fellow-servants or co-employees.

It would seem that in the county court the only question was whether the plaintiff, as a wiper of engines in the roundhouse, was a fellow-servant of the engineer or conductor of the freight train, or those having charge of the same, so that he could not recover by reason of their negligence. But in this court the main question seemed to be that at the time of the injury the plaintiff was not an employee of the defendant, because not then actually employed in the service of the company, but was merely going to the roundhouse, the place of such employment or service. This question would seem to be foreclosed by the allegations of the complaint. It is alleged that at the time thereinafter mentioned, viz., at about 6 o'clock on the 5th day of February, 1886, the time when he was injured, the plaintiff *was employed* by the defendant as a laborer to attend to the

wiping and cleaning of locomotives, etc. Then, again, the plaintiff bases his right to be on that pathway on the grounds of the company, and to pass safely through the opening of the cars thereon, and to have it kept open for him, solely upon the fact that he was at that time an employee of the company with others who were accustomed to use the same going from or returning to their work in the roundhouse. It is not alleged that the company owed the plaintiff any duty to keep open for him that pathway or to look out for his safety thereon, *except* as he was an *employee* of the company and in its service at the time. Otherwise, he was a stranger, intruder, and trespasser upon the grounds of the company, and the company was not charged with any duty towards him or such persons at that place. It follows that, if the company was charged with any liability to the plaintiff for the negligence of its servants and employees, it is because he was a co-employee of the company or fellow-servant with them. It is the *gravamen* of the complaint that, by custom having the force of contract, the company kept open, and was bound to keep open, that pathway between the cars for the use and convenience of the plaintiff and other employees of the company whose business it was to do the wiping and cleaning of the engines in that roundhouse of the company, in going away from or returning to their said work in the roundhouse. It is not charged in the complaint that, by custom or usage, that pathway was or was to be kept open for the public or strangers by the company, as a public or private way by dedication or consent, for their use or convenience. It was solely for the use of the plaintiff as an employee or servant, and for other employees or servants of the company whose duties were performed in that roundhouse. By the complaint, it was a means of egress or ingress from or to that roundhouse, provided by the company for the exclusive use of the plaintiff and his co-employees, as useful and essential to them as a

door or gateway to the roundhouse itself. From these facts the duty of the company to keep open this pathway for the plaintiff, and assure the safe use thereof to the plaintiff, is educed. The company and those having charge of the train at the time were aware of this custom and had good reason to suppose that this pathway or opening was being used at the time by the plaintiff and was left open for him on his way to the roundhouse, and hence their duty to look out for his safety therein. We therefore agree with the plaintiff that he was, at the time he was injured in that pathway in the opening between the cars, in the employment of the company.

This might well end the case so far as the question whether he was then an employee of the company is concerned; and yet the learned counsel on both sides saw fit to discuss the question whether the plaintiff was really an employee at the time, and through courtesy we pass upon it as a question of law, although in some cases this question is made one of fact for the jury. The facts being admitted by the demurrer, it may as well be treated as a question of law. We will not enlarge the question, even to the extent the argument of the learned counsel seemed to carry it, but confine it strictly to this case on its facts. As to what may be the law when an employee of a railway company is not actually employed, or at any intervals of actual labor, or going to or from his labor his own way and independently of the company, or under other circumstances, is immaterial to this case. The authorities may be in great conflict on that question; but we are not aware that they are in conflict on the question presented by the facts of this case. Here we have a private pathway over the grounds of the company, granted and allowed to the plaintiff and other employees of the company who worked in the roundhouse, by usage, custom, and consent, for their ingress and egress to and from their work, kept open across the track

of the road, and which had been worn and used by himself and others for long time prior to the injury, and that in order to reach the roundhouse it was necessary for him to go upon said pathway and to cross the track of the company at that place. It was the means, and only means, of entrance and exit to and from their work furnished by the company, and the plaintiff and others had a right to its free and uninterrupted use as they always had; and it was because they were the employees of the company in the roundhouse that they had such right and privilege. It was an essential part and ingredient of the plaintiff's contract of employment, and incidental to it, as much as any means and facilities for his labor in the roundhouse itself furnished by the company. The plaintiff, therefore, while enjoying such privilege and facility, or while passing along that pathway and between the opening of the cars, was an employee and servant of the company, as much as while actually laboring for the company in the roundhouse, and as much within his contract of employment. On the other hand, there was, by virtue of the same contract, a corresponding duty of the company to keep that passage-way open for the plaintiff, for he had a right to be there as an employee of the company working in the roundhouse. If the company violated that duty, to the plaintiff's injury, by its own act or primary negligence, its liability to respond in damages is absolute and unquestionable; but, if the plaintiff has this benefit or advantage by reason of his relation to the company as an employee, he must also suffer the disadvantage, if it be such, of being remediless against the company, if his injury in that relation was caused by the negligence of his co-employees or fellow-servants. But this will be considered hereafter.

Our present concern is, Was he, when injured, an employee of the company? The peculiar facts of this case which make him such, appear to involve precisely the same

principle as that class of cases where the plaintiff was being carried on his way from and to his place of labor by the railroad company, by consent, custom, or contract, and was injured by the negligence of other employees of the company. This carriage of the plaintiff was the means, facility, and advantage, to which he was entitled by reason of his being an employee or servant, which entered into and became a part of his contract of employment, or were incidental and necessary to it. In *Gilman v. E. R. Corp.* 10 Allen, 233, the plaintiff was a car-repairer, and was being carried on the cars of the company to his home at night, a distance of about four miles, free of charge, by the contract. He was injured on the way by the carelessness of a switch-man of the company. It was held not only that he was an employee of the company at the time, but a co-employee of the switch-man, and could not recover. In *Gillshannon v. S. B. R. Corp.* 10 Cush. 228, the plaintiff was a laborer repairing the road-bed several miles from his home, and was being carried on a gravel train to his work free, and by the mere consent of the company, and was injured on his way by the carelessness of those having charge of the train. Dewey, J., says in the opinion: "If the plaintiff was, by the contract of service, to be carried to the place of his labor, then the injury was received while engaged in the service for which he was employed, and so falls within the ordinary cases of servants sustaining an injury from the negligence of other servants. If it be not properly inferable from the evidence that the *contract* between the parties actually embraced this transportation to the place of labor, it leaves the case to stand as a *permissive privilege granted to the plaintiff, of which he availed himself, to facilitate his labor and service, and is equally connected with it and the relation of master and servant,* and therefore furnishes no ground for maintaining this action. This expresses the exact principle of this case. The keeping open

of this pathway between the cars was a permissive privilege (established by custom in this case) granted to the plaintiff, of which he availed himself, to facilitate his labor and service, and is connected with it and the relation of master and servant. In *Seaver v. B. & M. R. Co.* 14 Gray, 466, a carpenter employed to repair the fences, bridges, etc., of the company, was carried to his work on the train, and was injured by the negligence of the engineer, or of those whose duty it was to inspect the axles of the cars. It was held that he was a servant of the company, and a fellow-servant of the engineer and the others, and could not recover. The case of *Ryan v. C. V. R. Co.* 23 Pa. St. 384, is closely in point. The plaintiff was a common laborer employed in digging and filling cars with gravel, etc. He lived about four miles distant from his principal work, and it was *usual* for him and his fellow-workmen to ride on a gravel train to and from their work, and while being so carried to his work he was injured by the carelessness of those in management of the train. It was held that he was a mere servant of the company, with the privilege of riding, as a part of his business, in the gravel train, which was one of the instruments of his work; and that he sued in his true relation, not as a passenger, but as a servant; and was injured by the carelessness of his fellow-servants, and could not recover. In *Tunney v. Midland R. Co.* L. R. 1 C. P. 289, the plaintiff was a laborer with others to assist in loading a pick-up train, and it was a part of their contract of service that they should be carried to and from their work. After his work was done for the day he was being carried to the place of his residence, and on the way was injured by the negligence of the managers of the train; and it was held that he was still a servant and could not recover for the negligence of his fellow-servants; and the case of *Gillshannon v. S. B. R. Corp.*, *supra*, is cited as authority by Field, queen's counsel. The case of *Higgins v.*

*H. & St. J. R. Co.* 36 Mo. 418, is an extreme case in favor of this principle. The plaintiff had been employed as a brakeman, but had ceased work for a considerable time, but had not been paid off. He hailed a train and took his place with other employees, and on his way he was injured. It was held that he was still an employee, and that his case did not come within the statute relating to the injury of *passengers.* In *Kansas Pac. R. Co. v. Salmon*, 11 Kan. 33; in *Russell v. H. R. R. Co.* 17 N. Y. 134; in *McQueen v. C. B. U. P. R. Co.* 30 Kan. 689; and in *Vick v. N. Y. C. & H. R. R. Co.* 95 N. Y. 267,— the plaintiff was a laborer, being carried by the company to or from his work, and was injured by the negligence of those in charge of the train; and it was held that they were fellow-servants with him, and that he could not recover. See, also, *Ross v. N. Y. C. & H. R. R. Co.* 5 Hun, 488..

There are many other similar cases, but they need not be cited, for the principle is sufficiently established. It is questionable whether any case conflicting with these cases can be found. There are cases which seem to conflict with them, but they are those in which the facts show that the plaintiff was a passenger paying fare, or from whom fare could have been exacted. But if, perchance, there are such cases, we think them unreasonable, and are not disposed to follow them. But, again, it may be said that the plaintiff was still an employee because he was attempting to use the pathway between the cars as the only customary and convenient means of access to and exit from the round-house which the company had provided and was under obligation to keep open and safe for him and his fellow-workmen, when he was injured. In *Brydon v. Stewart*, 2 Macq. 30, the plaintiff was a miner, and had quit work in *mutiny;* and yet the master was held bound to provide his safe exit from the mine as an employee or servant. We conclude, therefore, that the plaintiff, when injured, was an

employee and servant of the company, with all the rights and liabilities implied by that relation.

2. Being an employee and servant of the company at the time he was injured, the next question is whether he was a co-employee or fellow-servant of those in the management of the freight train whose negligence caused the injury. The allegation of the complaint is that the company "caused the cars to be jammed together by one of its locomotives without warning," etc. Inferentially, at least, the negligence was on the part of the engineer of the train, who was in charge of said locomotive. But, at all events, those in the management of the train, whether as engineer, brakeman, or conductor, or one of them, was guilty of the negligence. By virtue of that custom, understanding, or contract by which the cars were to be kept open for the passage between them of the plaintiff and others employed in the roundhouse, the plaintiff was at the time placed in connection with those in charge of the train, and was specially dependent upon their due care and prudence in keeping the train open at that pathway. It was the plaintiff's business to wipe and clean the engines and prepare them for the road. Those whose negligence caused his injury had charge of such an engine, through whose instrumentality he was injured. The business of the plaintiff, and that of him or those whose negligence caused his injury, were not very remote from each other, or in very different grade or department. They would seem to be rather intimately connected. Without discussing the rule that has been so many times before this court, we are satisfied that this case falls clearly within the rule of co-employees or fellow-servants. All the cases above cited to the point that the plaintiff was an employee held, also, that he was a co-employee of those in charge of the train, and he had nothing to do with the running of the train whatever, but was simply a common laborer on the track of the road, or a

mechanic making repairs. The fact that the plaintiff and those through whose negligence he was injured are engaged in different departments of the same service, does not take the case out of the rule. *Farwell v. B. & W. R. Co.* 4 Met. 49; *Foster v. M. C. R. Co.* 14 Minn. 360; *Manville v. C. & T. R. Co.* 11 Ohio St. 417; *Whaalan v. M. R. & L. E. R. Co.* 8 Ohio St. 249; *Ross v. N. Y. C. & H. R. R. Co.* 5 Hun, 488; *McAndrews v. Burns,* 39 N. J. Law, 117; *Wright v. N. Y. C. R. Co.* 25 N. Y. 562; *Coon v. S. & U. R. Co.* 5 N. Y. 492; *Lehigh Valley Coal Co. v. Jones,* 86 Pa. St. 432. A member of a repairing gang and an engine-driver are fellow-servants within this rule (*Chicago & A. R. Co. v. Murphy,* 53 Ill. 336; *Rohback v. Pac. R. Co.* 43 Mo. 187); a master mechanic and locomotive engineer (*Hard v. V. & C. R. Co.* 32 Vt. 473); the brakeman of one train and the engineer of another (*Wright v. N. Y. C. R. Co. supra*); a watchman at a street crossing and a switch-tender (*Sammon v. N. Y. & H. R. Co.* 62 N. Y. 251); an employee crossing the track on his way to work and the engine-driver who backs the engine upon him (*Keyes v. Pennsylvania R. Co.* (Pa.) 3 Atl. Rep. 15); a car-repairer and a brakeman (*Nashville, etc. R. Co. v. Foster,* 10 Lea, 351; 11 Am. & Eng. R. Cas. 180); a mechanic in the repair-shop and a brakeman (*Wonder v. B. & O. R. Co.* 32 Md. 419); a section-hand and the engineer (*Clifford v. O. C. R. Co.* 141 Mass. 564; *Foster v. Railway Co., supra; Collins v. St. P. & S. C. R. Co.* 30 Minn. 31; *Boldt v. N. Y. C. R. Co.* 18 N. Y. 432; *Blake v. M. C. R. Co.* 70 Me. 60); a track-man and baggage-man (*Moseley v. Chamberlain,* 18 Wis. 700); section-man and brakeman (*Cooper v. M. & P. du C. R. Co.* 23 Wis. 668); a shoveler on the track and conductor (*Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Howland v. M., L. S. & W. R. Co.* 54 Wis. 226; *Heine v. C. & N. W. R. Co.* 58 Wis. 525); brakemen and train-men (*Whitwam v. W. & M. R. Co.* 58 Wis. 408); car-repairer and train-men (*Luebke v. C., M. & St. P.*

*R. Co.* 63 Wis. 91); a track-walker and fireman (*Schultz v. C. & N. W. R. Co.* 67 Wis. 616).

Many of these cases are cited in the brief of respondent's counsel, and others are found in a note to the case of *McLeod v. Ginther*, 8 Am. & Eng. R. Cas. 162. To cite any more analogous cases is unnecessary, after so many similar cases have been decided by this court. It is too clear for argument that the plaintiff and those whose negligence caused his injury were co-employees and fellow-servants, and that the complaint, for that reason, shows no cause of action against the company.

The last point, that at least the negligence in part is charged *directly* against the company as the violation of an absolute duty to keep that pathway open, and that it was a question for the jury as to whose negligence caused the injury, is not in the case. On the demurrer to the complaint it was the duty of the court to decide whether the company was directly charged with the negligence, or its employees; and, having decided that the complaint charged the managers of the freight train with the negligence that caused the plaintiff's injury, it decided also that such persons were the fellow-servants of the plaintiff. We think the county court decided correctly. I must say for myself that I regret that such is the rule; but it has been so long established and so often reaffirmed by this court that it is now protected by the principle of *stare decisis.* Besides this, the legislature of this state has sanctioned it by repealing the statute which abrogated it.

TAYLOR, J. This is an action to recover damages for a personal injury to the plaintiff alleged to have been inflicted by the defendant company by carelessly and negligently running their cars upon him while he was crossing one of their railroad tracks in the switch-yards of the defendant on his way to his place of work. The complaint was de-

murred to by the company on the ground that it does not state facts constituting a cause of action. The demurrer was sustained upon the ground that the plaintiff was an employee of the defendant, and that his injury was caused by the negligence of another co-employee of defendant, and not by the negligence of the company. On the part of the counsel for the appellant it is urged that the plaintiff, being employed as an engine-wiper to work solely in the round-house upon engines brought into such roundhouse, ought not to be considered a co-employee with those whose duty it is to attend to the making up and switching trains and cars in the yards of the defendant. And as a second reason why the complaint should be held to state a cause of action, the learned counsel for the appellant insist that the facts stated in the complaint show that, at the time the injury was committed, the plaintiff was not in the actual employ of the company. The substance of the allegations of the complaint on this point is that the plaintiff was employed to work in the roundhouse at wiping engines; that his employment commenced in the evening and continued during the night and until the morning; that when he was injured he was on his way to commence work but had not yet arrived at the roundhouse, and, while so on his way and before he had reached his place of work, and before the time for commencing his work had arrived, he was injured by the negligence and carelessness of the defendant, its servants and agents.

While I am not disposed to dissent from the opinion of the court that the plaintiff was a co-employee with those in charge of the train which caused the injury when engaged in his daily work, I am not prepared to say that the plaintiff was in the employment of the defendant when the accident happened. It appears to me that the man who works by the day or month for another, boarding himself, and having a stated time each day within which he must per-

form his work, cannot be considered in the employment of his master so as to bring him within the rule that he assumes the risks of the negligence of his co-employees, except when he is actually in his place of employment during the time he is required to do his work, or if absent from his place of work during that time in the business of his employer or for his own pleasure or necessities. When his day's work is done, and he leaves the place of his work, until he returns to the place of his work again on the next day, he is not in such employment so as to be subjected to the risks of the carelessness of his fellow-workmen. No court has, I think, held that the laborer assumes the risk mentioned during all the time between the finishing of one day's work and the commencement of another day's work; but some courts have held that he must be considered in such employment when, either by the express or implied terms of his contract of employment, his employer agrees to carry him to and from such place of employment, while he is being so carried to and from his work. Other courts hold that his employment commences only when he has reached his place of work, ready to commence his day's work, and that it ends when he leaves his place of work,— when his day's work is finished.

I am inclined to agree with the courts holding to the rule first stated, as being founded upon the great weight of authority, but I am not inclined to extend the rule as limited in such cases, and when the servant has no contract with his employer to bring him to and return him from his place of work. I think his employment ends when his day's work is finished, and does not commence again until he reaches his place of work on the next day. That the laborer should be considered as taking any risks as to other employees of his master, on his way home from his work or on his way to his work, that he does not take after he arrives at his home and during the hours until it is again

necessary for him to commence his work, when the employer does not carry him back and forth, can only be supported by the argument that, having agreed to be at his work at a certain hour each day, he necessarily agrees that he will leave his place of abode at the proper time and proceed to his place of employment so as to be there in time to commence his work; and so, on leaving his work when his day's work is done, his employment renders it necessary that he shall go to his place of abode. In other words, his employment renders it necessary that he shall come to his place of employment and return therefrom to his home when his day's work is done; and so it may be said that the making of the two journeys is a part of his employment. No court has carried the rule to that extent, and I see no good reason for so extending it. I am of the opinion that the employer does not take into consideration the distance the employee has to travel to and from his place of labor, and regulate his pay in accordance with the distance traveled. The employer gives just as much to the man who travels forty rods to and from his work as to the man who travels four miles or even further for that purpose. Usually that matter is not a subject of consideration with the employer. There can be no middle ground. The man who travels four rods to and from his work, under the rule stated, is no more in the employ of his master while so traveling than the one who travels four miles or further, and both must be considered in such employ during the whole length of the journey or else not in such employ during any part of it. The rule established in this case would defeat a recovery for damages if the employee had to cross the track of the railroad of the company in coming and returning from his employment at a distance of four miles from the place of work, as well as when the injury is sustained in crossing the track within a few rods of the place of his work, and though the accident happened when

he was traveling over a public highway across which the railroad of the company passed.

It might be asked whether under the rule that the employee is in the service of his master coming to and returning from his place of labor, he would not be considered a co-employee with others running the trains of the company, even though he had paid his passage on the cars of the company to carry him to or from his place of work. All the cases cited to sustain the ruling of the court in this case are cases where, by the terms of the employment, the employee was to be carried to and from the place of his labor by the employer free of charge, and it was upon that feature of the contract, and upon that alone, that the employee was held to be an employee of the company on his way to and return from the place of his employment. Such is the case of *Vick v. N. Y. C. & H. R. R. Co.* 95 N. Y. 267, and the cases cited in that case in support thereof. See, also, *Russell v. H. R. R. Co.* 17 N. Y. 134; *Gillshannon v. S. B. R. Corp.* 10 Cush. 228; *Seaver v. B. & M. R. Co.* 14 Gray, 466; *Vick v. N. Y. C. & H. R. R. Co.* 95 N. Y. 270; *Kansas Pac. R. Co. v. Salmon*, 11 Kan. 83; *McQueen v. C. B. U. P. R. Co.* 30 Kan. 689; *Higgins v. H. & St. J. R. Co.* 36 Mo. 432,— and very many other cases which can be found in the books. No case can, I think, be found where a court has held that an employee was in the service of his employer so as to subject him to the rule that he assumes the risk of his employment and the dangers incident thereto from the carelessness of his co-employees, while coming to his place of employment or returning therefrom, unless he was doing so under an express or implied agreement with his employer to carry him to or from his place of employment and when he was in fact being so carried upon the cars or other means of transportation furnished by his employer. In all the cases I can find in which that precise question has arisen, the courts have held that while going to and returning from the place

of his employment after his day's work was finished and before it commenced again on the next working day, he was not in the employ of the master, and so does not assume the risk of the carelessness or neglect of the other employees of the master. See the following cases: *Baird v. Pettit*, 70 Pa. St. 477, 483; *Balt. & O. R. Co. v. State*, 33 Md. 542, 555; *Abell v. W. M. R. Co.* 63 Md. 433, 441; *Broderick v. D. U. Depot Co.* 56 Mich. 261, 267, 268; *Hutchinson v. Y. N. & B. R. Co.* 6 Eng. R. Cas. 580, 588; *O'Donnell v. A. V. R. Co.* 59 Pa. St. 239; *Russell v. H. R. R. Co.* 5 Duer, 39.

The only case cited and relied upon by the learned counsel for the respondent as at all tending to support the rule that in coming to and returning from his work, when not being carried by contract with his master, he is in the employ of the master so as to subject him to the risks of the negligence of his co-employees, is the case of *Brydon v. Stewart*, 2 Macq. 30. An examination of this case will show that it entirely fails to state or uphold any such rule. The Scotch court held against the plaintiff, and the House of Lords reversed their decision. The action was by the widow and children of the employee, who had been killed in the defendant's coal mine. The facts of the case were as follows: The deceased with his other fellow-workmen were sent down the shaft into the mine in the morning to go to work; they were let down in a cage run by machinery for that purpose and operated by other employees of the defendant. The men held a meeting in the mine, and concluded to leave their work and come out of the mine to make a representation of their grievances. In coming up the shaft in the cage a stone fell from the side of the shaft and killed the employee. The jury found that the stone fell because the wall or lining of the shaft was defective and unsafe, and they also found that the deceased and his associates quit work without just cause, and demanded to

be brought out of the mine for their own purposes, and not for any purpose connected with their work. Upon these findings the Scotch court rendered a judgment in favor of the defendant. In the House of Lords this judgment was reversed. The reasons for the reversal were given by the Lord Chancellor, and they are briefly stated as follows: "I quite adopt the argument of the solicitor general that a master is only responsible while the servant is engaged in his employment, but we must take a great latitude in the construction of the phrase, '*being engaged in his employ.*' It would be a monstrous proposition, indeed, if, having sent a workman down into my mine to work for me, and he chooses not longer to be employed there, and ceasing to work, requires me to take him up again, but that the taking up should in that case be without my being liable for the same due caution for which I was liable when I let him down. If, having taken him up, I afterwards dismiss him, or if he remains in my employ intending to go down to-morrow into the mine again, but in the interval he does something not in the course of my employ, I am not by the law of Scotland or of England responsible for any accident befalling him during that interval." Certainly this case gives no sanction to the rule that the servant is in the employ of his master while coming to his place of work or returning therefrom.

I am not disposed to so construe the law as to make a servant in the constructive employment of his master when he clearly is not in his actual employ, for the purpose of subjecting him to the rule that he assumes the risks of his employment and the negligence of his co-employees. When all the allegations of the complaint are considered, the general statement that the plaintiff was in the employ of the defendant when the accident happened ought not to conclude him upon a general demurrer, when the other allegations clearly show that he was on his way to his place

Cassidy and wife vs. The Chicago & Northwestern R. Co.

of employment, had not then arrived at such place, and the time for commencing his work had not yet arrived.

Upon the ground that the complaint shows that the plaintiff was not in the actual employment of the company when he was injured, I think the case states a cause of action, and the demurrer should have been overruled.

*By the Court.*— The order of the county court is affirmed, and the cause remanded for further proceedings according to law.

See note to this case in 36 N. W. Rep. 12.— REP.

