CHARLES J. MOUSO *vs.* A. N. KELLOGG NEWSPAPER CO.

Submitted on briefs July 10, 1894.    Affirmed July 26, 1894.

No. 8784.

Servants' acts causing injury held not within the scope of their duties.

Evidence considered, and *held* to justify the court below in directing a verdict for defendant.

CANTY, J., dissenting.

Appeal by plaintiff, Charles J. Mouso, from an order of the District Court of Hennepin County, *Chas. B. Elliott*, J., made February 21, 1894, denying his motion for a new trial.

The defendant, A. N. Kellogg Newspaper Company, a corporation, was on September 6, 1893, a tenant and in possession of the sixth story of the Edison building, No. 417 Hennepin avenue in Minneapolis, using it in the business of printing "patent insides" for country newspapers and sending them out by express.    Plaintiff was in the employment of the Great Northern Express Company and went up the elevator as usual that day at two o'clock in the afternoon to get packages of these "insides" for shipment to the country.    When he had obtained his packages and had receipted for them and stood encumbered with them at the elevator door ready to descend, the circumstances narrated in the opinion occurred.    He brought this action to recover damages.    When all his evidence was given the court on

motion of defendant ordered the jury to return a verdict for defendant. Plaintiff excepted, moved for a new trial, but was refused and he appeals.

*Larrabee & Gammons,* for appellant.

Defendant's shipping clerk was at the time he called out to plaintiff, engaged in serving his master, or in other words the act of which we complain was done in the execution of defendant's business. *Morier* v. *St. Paul M. & M. Ry. Co.,* 31 Minn. 351. It was a question of fact for the jury to determine on the evidence whether he was acting within the scope of his employment. *Haluptzok* v. *Great Northern Ry. Co.,* 55 Minn. 446; *Potulni* v. *Saunders,* 37 Minn. 517; *Ellegard* v. *Ackland,* 43 Minn. 352; *Mulvehill* v. *Bates,* 31 Minn. 364; *Gunderson* v. *Northwestern Elevator Co.,* 47 Minn. 161; *Osborne v. McMasters,* 40 Minn. 103; *Brazil* v. *Peterson,* 44 Minn. 212.

*Charles P. Brown,* for respondent.

The elevator was exclusively owned and operated by the owner of the building, for the benefit of the numerous tenants of the building and of the persons doing business with them. Defendant had no control of the elevator or of its approaches or authority or right to interfere with it. Giles who opened the elevator door was a type-caster and had no other business to attend to for defendant. The shipping clerk merely delivered the packages to plaintiff and took a receipt for them after which he had nothing further to do with the goods or with plaintiff. Whether or not plaintiff requested Giles to open the door is uncertain, Giles testifying that such request was made, and plaintiff denying it.

A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, and which does not happen in the course of their employment. *Morier* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 351; *Tarbox* v. *Missouri Pac. Ry. Co.,* 32 Mo. App. 378.

The evidence conclusively shows that whatever injury plaintiff received was occasioned solely by his own carelessness.

GILFILLAN, C. J. Action for an injury sustained in falling down an elevator shaft. The defendant occupied, as tenant, the sixth story

of a ten or twelve story building. For the use of tenants, and those having business with them, there was a freight elevator extending up through the several stories. Its shaft was inclosed, but had, on defendant's story, a door fastened on the inside, or elevator side, which the man in charge of the elevator opened when it stopped at that story, and closed and fastened when it left that story, going up or down. The elevator and the door were in the control of the owner of the building, the defendant having no more control of them than any one else. Any one desiring the elevator to come to or stop at that floor gave a signal by touching a bell.

Plaintiff was in the employment of an express company which did the carrying for defendant, and he received and receipted for its packages at its room, and took them down by means of the elevator. As soon as he receipted for them, they were entirely in his control, and the defendant and its servants exercised no control over them, and had no part in getting them to, and down on, the elevator.

On the occasion when injured, he had gone up the elevator, received and receipted for the packages, and was waiting for the elevator to come to that story. An employé of defendant, though it was outside of his duty, and was unconnected with any business of his master, reached through a broken window in the door in the elevator shaft, and opened it. After a little, defendant's shipping clerk, knowing plaintiff was waiting for the elevator, called out to him, "All right, Charlie," and he, supposing that meant the elevator was up, picked up a package, walked through the door, and, the elevator not being there, fell down the shaft.

It is claimed that defendant was chargeable with negligence because of its shipping clerk indicating that the elevator was all right.

But, in the first place, there is no evidence that the shipping clerk knew the door was open without the elevator being there, and, secondly, his act of advising plaintiff the elevator was right was not the act of his master, nor was it done in performing any duty to his master. It was no part of his duty to assist plaintiff, in any way, in handling or getting the packages on the elevator.

On the evidence, defendant could not be held on the ground that the open door made its premises unsafe. It was not responsible for the act of the man who opened it, for in doing so he was not about his master's business, and it was not shown that any of its servants,

whose duty it might be to shut it, knew it was open. The manager was not there. The evidence was stronger to show plaintiff knew it was open, without the elevator being up, than it was to show any one else, but the man who opened it, knew of it.

Order affirmed.

BUCK, J., absent, sick, took no part.

CANTY, J. I dissent. It was a question for the jury whether or not plaintiff knew the elevator door was open, when the elevator was not at that floor some time prior to the accident. The evidence offered to prove that it was open, and that he knew it, was sufficiently contradicted.

It was a question for the jury whether the shipping clerk knew the door of the elevator was open, and whether or not he was acting within the scope of his employment when he indicated to plaintiff that the elevator was ready, and whether or not it was a part of his duty to assist plaintiff to get the packages to the elevator, or off the premises. The fact that plaintiff receipted for the packages on the premises is not conclusive on this point.

It was also a question for the jury whether or not the other servant, who was at work on his master's premises, in and about his master's business, was acting within the scope of his employment when he opened what appears to be the principal, if not the only, means of access to those premises, and left it open in such a way as to make it a dangerous pitfall for persons on the premises by invitation. The law would seem to be well settled on that point. See the cases cited in Thompson, Neg. 307, § 5.

(Opinion published 59 N. W. 941.)