FRANK L. SLATER v. ADVANCE THRESHER COMPANY.[1]

February 16, 1906.

Nos. 14,601—(199).

**Negligence of Servant—Injury to Third Person.**

The master is not liable for injuries occasioned to a third person by the negligence of his servant while the latter is engaged in some act beyond the scope of his employment, for his own or the purposes of an-

[1]Reported in 107 N. W. 133.
97 M.—20

other, although he may be using the instrumentalities furnished by the master with which to perform his duties as servant.

### "Course of Employment."

The expression "in the course of his employment" means, in contemplation of law, "while engaged in the service of the master," and nothing more. It is not synonymous with "during the period covered by his employment."

### Application of Rule.

Defendant is a Michigan corporation, engaged in the manufacture and sale of farm implements. Gregory was its general manager for the northwest, with headquarters at Minneapolis, this state, and Nichols was its general agent for the state of North Dakota, and resided at Fargo, in that state. Defendant furnished its agent at Fargo an automobile to facilitate the performance of the duties of his agency, which he used whenever necessary. After business hours on the day of the injury complained of in this action, the two agents, Gregory and Nichols, took the automobile so furnished Nichols by the defendant, and started for Moorhead, this state, just across the river from Fargo, on a mission purely personal to themselves and wholly independent from the affairs and business of defendant. While so engaged a team of horses belonging to plaintiff became frightened by the alleged negligent manner in which the agents operated the automobile, and this action was brought against the defendant to recover damages occasioned thereby, on the theory that it was liable for the negligence of its agents. *Held* that, on the principle of the law above stated, defendant is not liable for the wrongful acts of the agents; the same not having been committed in the course of their employment.

Action in the district court for Clay county to recover $1,975 for personal injuries. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $1,000. From an order denying a motion for judgment notwithstanding the verdict, and denying a motion for a new trial upon condition that plaintiff consent to a reduction of the verdict to $500, defendant appealed. Reversed and judgment ordered for defendant.

*Wm. R. Tillotson* and *H. R. Turner,* for appellant.

*C. A. Nye,* for respondent.

BROWN, J.

The facts in this case are as follows: Defendant is a corporation organized under the laws of the state of Michigan, engaged in the

manufacture and sale of farm machinery. Walter Gregory is its general manager for the northwest, with headquarters at the city of Minneapolis, this state, and W. L. Nichols is its general agent for the state of North Dakota, residing at Fargo, in that state. Defendant furnished its agent at Fargo, to facilitate the discharge of his duties, an automobile, which he used and operated whenever convenient in his work. After business hours on the day of the injury complained of, the two agents, Gregory and Nichols, took the automobile so furnished Nichols by defendant and started for Moorhead, a city in this state just across the river from Fargo, on a mission and for a purpose purely personal to themselves, and wholly distinct from the affairs and business of the defendant. Just as the agents with the automobile reached the bridge between the two cities, plaintiff's horses, which he was driving, became frightened by reason, as alleged in the complaint, of the negligent manner in which the agent operated the machine, and ran away, injuring plaintiff and damaging the buggy to which they were attached. This action was brought against defendant to recover for the injuries so occasioned, on the theory that it was liable for the negligent conduct of its agents. At the close of the trial in the court below, defendant requested that a verdict be instructed in its favor, which was refused; the case was submitted to the jury and a verdict returned for plaintiff for the sum of $1,000. On motion for a new trial the verdict was reduced to $500 by order of the court, and a new trial denied, from which defendant appealed.

The assignment of error to the effect that the court erred in not directing a verdict for defendant is the only one requiring consideration, and that presents the question whether on the facts stated, which are not in dispute, defendant is liable for the negligence of its agents in the operation of the automobile under the circumstances and on the occasion stated.

1. It is elementary that the master is not liable for injuries occasioned to a third person by the negligence of his servant, while the latter is engaged in some act beyond the scope of his employment, for his own or the purposes of another, although he may be using the instrumentalities furnished him by the master with which to perform the ordinary duties of his employment, or, as expressed in Shear. & R., Neg. (3d Ed.)

§ 63, that if the act complained of be committed by the servant while at liberty from the service of the master and while pursuing his own interests exclusively, there can be no question of the master's freedom from liability, even though the injury would not have been committed without the facilities afforded the servant by his relation to the master.

The law on the subject is clearly stated in the case of Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793, where the court said: "The doctrine of the liability of the master for the wrongful acts of his servant is predicated upon the maxims, 'respondeat superior' and 'qui facit per alium facit per se.' In fact, it rests upon the doctrine of agency. Therefore, the universal test of the master's liability is whether there was authority, express or implied, for doing the act; that is, was it one done in the course and within the scope of the servant's employment? If it be done in the course and within the scope of the employment, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. Smith, M. & S. 284. But a master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only occur when that which is done is within the real or apparent scope of the master's business. Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. A master is not responsible for any act or omission of his servant which is not connected with the business in which he serves him, and does not happen in the course of his employment. And in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself and as his own master pro tempore, the master is not liable. If the servant step aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously ex-

pressed, is the uniform doctrine laid down by all authorities"—citing 2 Thompson, Neg. 885, 886; Shear. & R. Neg. §§ 62, 63; Cooley, Torts, 533, et seq.; Little Miami v. Wetmore, 19 Oh. St. 110; Storey v. Ashton, L. R. 4 Q. B. 476; Mitchell v. Crassweller, 13 C. B. 237; McClenaghan v. Brock, 5 Rich. Law, 17. The doctrine laid down in that case has been followed in all subsequent cases in this court where the question has been presented (Campbell v. Northern Pac. R. Co., 51 Minn. 488, 53 N. W. 768; Mouso v. A. N. Kellogg Newspaper Co., 58 Minn. 406, 59 N. W. 941), and is fully in harmony with the general trend of the authorities elsewhere (4 Mich. L. Rev. 199). The late cases on the subject are cited in 4 Current Law, 609.

A reference to a few of the decisions of other courts may not, in view of the earnestness with which counsel for plaintiff presented his case on the oral argument, be out of place. The proper application of the doctrine is illustrated by the following cases.

In Clancy v. Barker, 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653, a hotel servant, while off duty, negligently or wilfully discharged a pistol in the office of the hotel, injuring a guest. The court held the hotel proprietor not liable, basing the decision upon the general rule that the master is not liable for the negligent or wrongful acts of his servant when not committed in the course of his employment.

In Cavanagh v. Dinsmore, 12 Hun, 465, it appeared that plaintiff's intestate was run over and killed by one of defendant's trucks, through the negligence of the driver, an employee and servant of the defendant. The driver had delivered merchandise at the office of the company and had been directed to take the truck to the stables and put it up. In proceeding to the stable in compliance with this order, he met another of the defendant's drivers, and at his request and as a personal favor to him, drove in another direction, a mile distant, to deliver a trunk belonging to the other driver. The accident complained of happened while he was thus accommodating that person. It was held that the driver in charge of the truck was not acting within the scope of his employment and defendant was not liable. The court in substance said, in course of the opinion, that it is well settled that the master is not liable for injuries sustained by the negligence of his servant while engaged in an act beyond the scope of his employment, for his own or another's

purposes, although he may be using the implements furnished him by the master. In that case, as in the case at bar, the servant was using the instrumentality provided by the master to assist in the general conduct of the servant's duties, and the rule of nonliability where the servant commits a wrongful act wholly independent and disconnected with his employment applied.

In Sheridan v. Charlick, 4 Daly, 338, the court, in a case similar to the one just cited, applied the same rule, and quotes with approval the passage from Shearman and Redfield on Negligence, before referred to.

In the case at bar the agent was in the control of the automobile which caused plaintiff's team to become frightened, and his possession thereof arose from his relation to the defendant; but he was not engaged in using it for the purposes for which it was furnished him, but, on the contrary, for ends entirely personal to himself. A similar application of the rule was made in Fish v. Coolidge, 47 App. Div. 159, 62 N. Y. Supp. 238.

In Reynolds v. Buck, 127 Iowa, 603, 103 N. W. 946, the defendant was a dealer in agricultural implements, automobiles, etc., and had decorated an automobile belonging to him for use by his daughter in a parade. After the parade, defendant directed that the automobile, which stood in front of the store, be taken inside. His son, who was in his employ as a clerk, took the machine and invited a lady friend for a ride with him. While the son was operating the machine for that purpose, plaintiff's horse was frightened thereby and he was injured. The court, among other things, said: "The direct evidence all shows that his use of the electric automobile was solely for the pleasure and convenience of the young lady and [defendant's son,] and that it was in no way or sense connected with his employment or with the defendant's business."

It was held that defendant was not liable. Stewart v. Baruch, 103 App. Div. 577, 93 N. Y. Supp. 161, was an action for damages occasioned by being struck and injured by the defendant's automobile in charge of his chauffeur, who was employed by the week. The chauffeur testified that he was not employed on the day of this accident; that the defendant telephoned him at nine o'clock in the morning saying: "You be off to-day. I go to New Haven." On that day, after being so ex-

cused by his employer, knowing that there were automobile races in Brooklyn, he planned and attended the races without the knowledge or leave of his employer. The accident occurred when he was returning from Brooklyn. The court held that the defendant was not liable, as the chauffeur, in taking the automobile out for his own pleasure and in violation of the instructions of his employer, was not, in so doing, acting within the scope of his employment.

Clark v. Buckmobile, 107 App. Div. 120, 94 N. Y. Supp. 771, is very similar to the case at bar. The injuries there complained of were received in an automobile accident. At the time of the accident the machine was in charge of the general manager of the defendant and another employee. On the day of the accident the general manager had taken a day off and went to another city on his own affairs. On his return he telephoned another employee to come to the station for him with an automobile, and on the way from the station plaintiff was injured, owing to the negligence of the two persons directing the movements of the machine. The automobile was owned by the employer and was furnished by him to the manager, to be used in the course of his employment. Among other things the court said: "Birdsall was the general manager of defendant while engaged in its business. When not engaged in such business, he represented no one but himself. Davis was an employee of the defendant while engaged in its business, but when not so engaged he did not represent defendant. These two men were in charge of the machine when the accident occurred. Davis was running it, and Birdsall was giving more or less directions with reference to its movements. Neither of them was engaged in the defendant's business, however. They did not represent the defendant, and it was not and is not liable for any negligence they were guilty of, which caused plaintiff's injuries."

2. The authorities cited are in harmony with the rule of the English courts on this subject. There, as here, it is not controlling that the master intrusts a servant with the exclusive control of the instrumentality causing the injury. The test is, was the servant acting within the scope or course of the employment at the time of the acts complained of. The English rule is summed up by Chief Justice Cockburn in Storey v. Ashton, 38 L. J. Q. B. 223, as follows: "I think * * * the law as laid down in Mitchell v. Crassweller presents us with a true

view of the case. I cannot adopt the proposition of Erskine, J., in Sleath v. Wilson, that, whenever the master has intrusted the servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it. I think that a servant can only be said to be acting in the employment of his master so long as he is doing some act with his master's assent. I think that if a driver, while acting in his master's business, were to make a slight deviation in order to carry some business of his own into effect, in such a case the master might be liable, and that the question would be one of degree as regards the extent of the deviation. But this is not the present case. Here the man starts upon an entirely independent journey, which has nothing to do with that which he undertook on behalf of his employer. While returning home by way of King William street he starts on a journey to the City Road, and is two miles out of the way when the accident happens. In Mitchell v. Crassweller the driver, after returning to his master's house, started upon an entirely independent journey. Here the case is not quite so strong, but in deviating as he did the driver did in fact start upon an independent journey. I think that it would be a strange thing to hold that in such a case the master is responsible." See also Mitchell v. Crassweller, 13 C. B. 237, where the same doctrine is applied.

It will be observed that the case of Sleath v. Wilson, 9 Car. & P. 607, cited and relied on by respondent in the case at bar, does not express the law of England on this subject. The decision made by Erskine, J., in that case was expressly rejected by Cockburn, C. J., in Storey v. Ashton, supra.

3. Stress is laid by counsel for plaintiff upon the construction of the phrase "in the course of his employment," and it is contended that the acts of the agents on the occasion in question bring the case within the proper understanding and definition of that expression. This phrase or expression is found in many of the books; but it has no particular magic, and does not enlarge the rule of liability in such cases. In contemplation of law it means simply while engaged in the service of the master, and nothing more. It is not used as synonymous with "during the period covered by the employment," but rather as expressive of "within the scope of his employment," or during the time when the servant is engaged in the performance of the master's work. The

phrase is used by Smith in his work on Master & Servant (5th Ed.) 284, in Philadelphia & R. R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502, and many other cases, an analysis of which does not justify the conclusion that the elementary principle which we here apply was in any sense departed from or enlarged. The phrase must be limited in sense and meaning to acts committed by the servant while engaged generally in the master's work. See cases cited in 34 Cent. Dig. col. 1943, § 1217. 1 Jaggard, Torts, 258, cited by plaintiff in this connection, does not sustain his contention. As we read what Judge Jaggard there said on the subject, the rule stated by him is in line with the principle laid down by this court in the case of Morier v. St. Paul, M. & M. Ry. Co., supra. He states that the expression "in the course of the employment" or "in the course of the service" does not enlarge the general principle applicable to cases of this kind.

4. There can be no question, under these authorities, but that defendant in the case at bar is not liable for the acts here complained of. There is no controversy about the facts, and the court erred in submitting the case to the jury. Whether the agents were acting within the scope of their employment was, under the evidence, a question of law. That they were operating the automobile for their own personal convenience and pleasure, wholly disconnected from any of their duties as servants of defendant, is not questioned, and they are alone responsible.

5. In Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959, 47 Am. Rep. 796, it appeared that defendant, owner of an express wagon, employed a driver and authorized him to secure and transact such business as he could get. The driver, having delivered a trunk, on his return got a load of poles for himself, and while conveying them to his home on the express wagon negligently ran over and injured the plaintiff's child. The court held the defendant, owner of the wagon, liable. That case is not decisive of the case at bar. It is near the line of nonliability, and is perhaps difficult to distinguish from the case of Morier v. St. Paul, M. & M. Ry. Co., supra.

The court distinguished it from that case in the following language: "We have had occasion recently, in Morier v. St. Paul, M. & M. Ry. Co., to consider and indorse the doctrine of these cases [referring to

the case of Mitchell·v. Crassweller, 13 C. B. 237]. But this class of cases is clearly distinguishable from the present. There the servant had specific orders as to the mode of dealing with the vehicle, and was obliged to attend to the specific errand on which he was sent and then return to his master. If, under these circumstances, he employed the vehicle on some purpose wholly independent of his orders, of course he was not within the scope of his employment, and the master is not liable. But here the wagon was intrusted generally to the driver, to be used entirely at his discretion. This distinction is very clearly stated by Cockburn, C. J., in Venables v. Smith, L. R. 2 Q. B. Div. 279, a case very analogous to this one."

The court further stated in the course of the opinion that if, in that case, "the driver had taken the wagon on an independent journey of his own, altogether out of the scope of the purpose for which it was intrusted to him, and an injury had then occurred, the defendant would probably not have been liable." This expression covers the facts of the present case, and is in accord with the general principle here applied.

6. The rule of law applicable to the care and protection of dangerous instrumentalities does not apply. That rule requires the master to exercise a proper degree of care to guard, control, and protect dangerous instrumentalities owned or operated by him, and, an injury occurring by reason of the improper use of such an instrumentality by a servant, though occasioned while not in the performance of his duty, the master is liable. But the principle on which liability is founded in such cases is the failure of the master to properly keep within his control such dangerous agencies. The rule is illustrated in Mattson v. Minnesota & N. W. R. Co., 95 Minn. 477, 104 N. W. 443.

Order reversed, and cause remanded, with direction to the court below to enter judgment on the merits for defendant notwithstanding the verdict.