## KATE SINA v. AARON CARLSON.[1]

January 17, 1913.

Nos. 17,791—(158).

**Uncontradicted evidence not conclusive.**

Testimony of both the owner and the driver of a team that the driver was acting without authority from the owner is not conclusive, though there is no other direct evidence on that subject. Facts and circumstances may overcome this direct testimony.

**Question for jury.**

O., a farm hand, driving a farm team, conveyed a load of his employer's furniture from his farm to his city home. Both testified that O. had no authority to do so. On returning, he collided with plaintiff's buggy. O. had full charge of this team on the farm. He had frequently driven it on the road. His testimony as to circumstances under which he came to convey

[1] Reported in 139 N. W. 601.

Note.—The liability of a master for tort committed by servant in course of his employment, and with a view to the furtherance of his master's business, but contrary to the master's express instructions, is the subject of a note in 18 L.R.A.(N.S.) 416.

On the question of the liability of master for injury from the sportive manner in which a servant performs an act done in the discharge of his duty, see note in 13 L.R.A.(N.S.) 1193.

The authorities on the liability of owner for injuries caused by automobile while being used by servant or third person for his own business or pleasure are collated in notes in 33 L.R.A.(N.S.) 79 and 37 L.R.A.(N.S.) 834.

his employer's goods on this occasion was denied. *Held:* A question for the jury whether he was acting within the scope of his agency.

**Master and servant.**

Where an employee is permitted, during the course of his employment, to use his employer's vehicle to facilitate the performance of necessary errands of his own, the relation of master and servant exists while he is so engaged.

Action to recover $5,025 for personal injuries. The complaint alleged that at the time of the accident defendant Olson was acting in his capacity of servant and employee of defendant Carlson and was engaged in the performance of his duties as such servant and employee. The separate answer of defendant Carlson alleged on information and belief that, if plaintiff sustained the injuries alleged, they were sustained solely by her own carelessness and negligence. The case was tried in the district court for Hennepin county before Hale, J., who denied defendant Carlson's motion for an instructed verdict in his favor, and a jury which returned a verdict for $750 against both defendants. From an order denying the motion of defendant Carlson for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*A. B. Darelius,* for appellant.

*Stan J. & Stan D. Donnelly,* for respondent.

HALLAM, J.

On November 14, 1910, plaintiff was driving with a horse and buggy on a country road. Defendant Olson, driving a team belonging to appellant, undertook to pass her from behind. He turned to the right, instead of to the left, and in passing struck the wheel of plaintiff's buggy and caused her to be thrown and to sustain some injury. Olson was in the employ of the appellant on his farm, and he had been in such employ nearly four years. This was one of the farm teams. He testified that he took care of the horses, drove them, and had charge of them; that he sometimes went to Minneapolis or New Brighton for provisions for his family, and when he did so would drive appellant's horses. One witness testified that he had seen Olson a number of times drive on this same road with this same

team, sometimes as often as twice a week. Olson further testified: "Mr. Carlson told me three years ago to stay on the farm and take care of the farm, because I had so much to do on the farm, so he didn't want me to go to town." Carlson testified that Olson was hired to stay on the farm and take care of the farm and the stock and the cottages, and not to be on the road. He testified that he did not know that Olson went into town on November 14 until some time later.

On this day Olson had taken to Minneapolis a load of furniture belonging to appellant, taking it from the farm to appellant's home in Minneapolis. He testified: "It was getting late in the fall, and Carlson had ceased living there for the summer and was taking some little things to town." He testified that he was not working for Carlson on that day, but for himself; that Carlson had not instructed him to take his furniture to town; that a teamster from Carlson's shop, Rudolph Anderson, came out to bring a load of manure and to take this furniture in, but that Olson told him that he would take it in. "The way I came to take it in," he said, "it was cold and the ground was wet and my kid go to school and he didn't have no rubbers and I didn't have no rubbers or overshoes and neither my wife." Another witness, however, testified that Olson left with the load several hours before Anderson arrived.

The jury returned a verdict in favor of the plaintiff and against both Olson and appellant. Appellant moved in the alternative for judgment notwithstanding the verdict or for a new trial. Both motions were denied. Carlson alone appealed.

There was ample evidence that Olson was negligent. The only question in the case is: Was the appellant liable for Olson's negligence? Appellant contends that Olson was acting outside of his employment and that he alone was liable.

The law on this subject is well settled in this state. The rule is that the master is responsible for the torts of his servant done within the scope of his agency; that is, in the course of his employment or in the line of his duty, with a view to the furtherance of his master's business, and not for a purpose personal to himself. The fact that the servant in committing the tort may have exceeded his actual

authority, or even disobeyed his express instructions, does not alter the rule. Smith v. Munch, 65 Minn. 256, 68 N. W. 19; Crandall v. Boutell, 95 Minn. 114, 103 N. W. 890, 5 An. Cas. 122, note; Slater v. Advance Thresher Co. 97 Minn. 305, 107 N. W. 133, 5 L.R.A.(N.S.) 598; Barrett v. Minneapolis, St. P. & S. S. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047, 18 L.R.A.(N.S.) 416, 130 Am. St. 585; Penas v. Chicago, M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926, 30 L.R.A.(N.S.) 627, 140 Am. St. 470. The expression "in the course of his employment" means while engaged in the service of the master; that is, while engaged generally in the master's work. Slater v. Advance Thresher Co. 97 Minn. 305, 312, 107 N. W. 133, 5 L.R.A.(N.S.) 598. The liability does not arise when the servant steps outside of his employment to do an act for himself, not connected with his master's business. Morier v. St. P. M. & M. Ry. Co. 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793.

Both appellant and Olson testified that Olson was forbidden to do teaming on the road, and that under no circumstances was he authorized to do so; but the jury was not bound to accept this testimony as true. There was ample evidence from which they might find the facts to be otherwise.

Whether he was in fact acting within the scope of his agency was fairly a question of fact for the jury. Olson was in appellant's employ, and was driving appellant's team. There was evidence that he had driven this team upon the road so frequently that the appellant's assent to his doing so might fairly be inferred. On this day he was admittedly performing a service for appellant. He was admittedly acting, in part at least, in furtherance of appellant's business, and not altogether for the purposes personal to himself. His own explanation of the circumstances under which he came to perform this service is not altogether satisfactory, and is contradicted by another witness. We hold that the finding of the jury that he was within the course of his employment, and within the line of his duty, is sustained by the evidence. See Gerhardt v. Swaty, 57 Wis. 24, 37, 14 N. W. 851; Hiroux v. Baum, 137 Wis. 197, 118 N. W. 533, 19 L.R.A.(N.S.) 332.

This verdict may be sustained, even though Olson's purpose in

making this trip was solely to make purchases for his household, and though he had no authority or direction to carry appellant's, furniture to town. The evidence is that he did habitually drive appellant's team to Minneapolis and New Brighton for similar purposes. There is ground for the inference that he did so with appellant's consent. He was appellant's employee; his time was his employer's. He was using his employer's team for a purpose consented to by his employer, and in order to facilitate the performance of an errand of his own which he was permitted to take time to perform. In so facilitating his own business, he was in fact facilitating his employer's business as well, and the purpose was not a private one, in which his employer had no interest. The rule is that, if within the course of his employment an employee is permitted to use his employer's vehicle to facilitate the performance of necessary errands of his own, he is still an employee while so doing, and the principle of respondeat superior applies. This rule has frequently been applied to cases where railway employees have been permitted to use an engine in going to and from meals. (E. St. Louis Con. Ry. Co. v. Reames, 173 Ill. 582, 586, 51 N. E. 68; Reilly v. H. & St. J. Ry. Co. 94 Mo. 600, 608, 609, 7 S. W. 407; Steffen v. McNaughton, 142 Wis. 49, 124 N. W. 1016, 26 L.R.A. (N.S.) 382, 19 An. Cas. 1227); or to and from work (Gilshannon v. Stony Brook, 10 Cush. [Mass.] 228; Ewald v. Chicago & N. W. Ry. Co. 70 Wis. 420, 428, 36 N. W. 12, 591, 5 Am. St. 178); and generally to the case of employees who are permitted to use the employer's instrumentalities for similar purposes (Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959, 47 Am. Rep. 796; Morier v. St. Paul, M. & M. Ry. Co. 31 Minn. 351, 353, 17 N. W. 952, 47 Am. Rep. 793).

Such an instrumentality is said in one case to be a "means, facility, and advantage, to which he was entitled by reason of his being an employee or servant, which entered into and became a part of his contract of employment, or were incidental and necessary to it" (Ewald v. Chicago & N. W. Ry. Co. supra); and in another case "a permissive privilege granted to the plaintiff, of which he availed himself, to facilitate his labors and service and is equally connected

with it, and the relation of master and servant" (Gillshannon v. Stony Brook, supra).

The order appealed from is affirmed.